### JOSIAH WATSON V. MILLER BROS.

#### No. 7042.

1.  **Evidence.** — Discussion of testimony resulting in conclusion that payments shown to have been made upon the note sued upon had not been allowed as credits.

2.  **Receipts May be Explained.**—A receipt may be disputed or impeached, and evidence tending to account for payments receipted for as entering into indorsed credits would have been competent to control the receipts.

3.  **Evidence Incompetent.**—Watson executed the note sued upon, acknowledging the vendor's lien upon the described tract of land. It was incompetent for Watson with view to defending to show a parol agreement between himself and others by which he was to buy the land and share it and the purchase money, each to be responsible for his own part only. This would alter Watson's written contract.

4.  **Depositions.**—A party failing to file cross-interrogatories can not read the depositions taken in answer to such interrogatories. See example.

5.  **Same—Cases Adhered to.**—Harris v. Leavitt, 16 Texas, 340, and Brandon v. McNelly, 43 Texas, 77, adhered to.

6.  **Memorandum Used by Witness.**—A witness should not be allowed to testify from a memorandum written by another at his (the witness') dictation. The witness stated he could not testify from his own recollection, but that he had referred to old letters, memoranda, and receipts, and that one of his counsel in his presence and at his dictation had made the memorandum used to aid his memory.

APPEAL from Bell. Tried below before Hon. WM. A. BLACKBURN. The opinion states the case.

*J. Earl Preston,* for appellant.

*Harris & Saunders,* for appellees.

COLLARD, JUDGE, *Section A.*—This suit was brought by the appellees against the appellant and others, September 14, 1880, for the alleged balance due on promissory note given by appellant for the last payment of the purchase price of a tract of land. The note was originally for $870.82½, bearing 10 per cent interest from date, executed by Josiah Watson on December 1, 1874, to Edwin W. Bush, agent of M. H. Lippman, payable in twenty-four months, at the office of Renick & Casseday, in Waco, as the third payment on 980$\frac{11}{20}$ acres of land, part of the Rebecca Edwards survey in Bell County. Deed of same date was made by Bush to Josiah Watson. The land was sold at $3 per acre; $1200 was paid in cash, and the residue of the price was divided into two equal installments of $870.82½, evidenced by two notes due respectively in twelve and twenty-four months, bearing 10 per cent interest per annum from date. The first note was fully paid, and, as alleged by plaintiff, on April 9, 1878, all of the last note was paid but $393.88, at which time for that amount it was indorsed by Renick & Casseday, signing as agents of Bush, to Miller Bros., who brought this suit for principal and interest and for foreclosure of vendor's lien.

It is claimed by Watson that other persons acting with him bought the land—that is, that J. R. Cheatham bought 200 acres, B. N. Ferguson 100 acres, E. W. Bush 143½ acres, F. P. Roberts 216 acres, T. J. Miller 100 acres, he (Watson) 116$\frac{4}{10}$ acres, and M. F. Flowers 104 acres. By amended petition these parties or their vendees were made parties defendant, as were also W. A. Casseday of Renick & Casseday, Thomas Moore, executor of Renick, deceased, and E. W. Bush, charging Bush, as indorser, and Renick & Casseday with fraud in transferring the note to plaintiffs. All defendants were dismissed by plaintiff at the first trial but Josiah Watson, who set up as defense that the note being part due had been fully paid off before it was transferred to plaintiffs; that the land was purchased by him and others as before mentioned, and that at the time of the purchase it was agreed by all the parties that each purchaser was only to pay for his part of the land at $3 per acre, and that as each so paid, his tract of the land was to be released from the vendor's lien, and that he (defendant) had overpaid his part. Attached to the answer were several receipts of payments on the note, so claimed at least, in addition to the credits indorsed on the note. On the 11th day of June, 1888, there was a verdict and judgment for plaintiff for $793.40 and foreclosure of the vendor's lien on all the land. Defendant Josiah Watson has appealed.

The first assignment of error attacks the verdict of the jury upon the ground that they disregarded receipts of payments on the note. Cred-

its are indorsed on the note as follows: February 6, 1877, $275.75 in gold; February 6, 1877, $146 in gold; March 16, 1877, $11.60 in gold; September 26, 1877, $100 in gold; January 29, 1878, $150 in currency.

On March 16, 1877, there was an indorsement made on the first note of $100 paid—overpaying the same by $53.14, which amount the indorsement states is to be entered as a credit on the last note; but it does not appear to have been done. It seems, however, to have been deducted from the amount due, as on April 9, 1878, when the note was transferred to Miller Bros., the amount then ascertained to be due was $393.88. This was in fact the amount due including the $53.14 at the time of and after deducting the last credited payment of $150. According to the foregoing credits the verdict is not more than it should have been. But in addition thereto defendant, as before stated, claims other credits as shown by various receipts of Renick & Casseday, with whom the notes were left for collection, and $111 deposited in the Waco National Bank by Watson to the credit of Bush. They are as follows:

The foregoing deposit December 20, 1876, $111 in gold.

February 5, 1877, paid by Beard to Renick & Casseday $167.50 in gold.

February 6, 1877, paid by B. N. Ferguson to Renick & Casseday $108.25 in gold.

May 18, 1877, paid by Asa Elliott to Renick & Casseday $35 in gold.

July 18, 1877, paid by E. W. Bush to Renick & Casseday $161.80 in gold.

September 26, 1877, paid by M. T. Flowers to Renick & Casseday $11.60 in gold.

February 26, 1877, paid by J. Watson to E. W. Bush $107.30 in gold.

The credit of $275.75 on the note, together with the evidence of Bush, satisfactorily accounts for the receipts of Beard for $167.50 and to Ferguson for $108.25. The two amounts make the $275.75. One receipt was given on the 5th of February, 1877, and the other on the 6th, and the credit is dated the 6th of February. The jury might well have concluded that the two receipts made up the credit. It might be that the jury connected the $111 deposited with the receipt of Bush for the $107.30. Bush's receipt is dated February 26, 1877, and shows that it was received from the Waco National Bank as paid by Watson on the last of the purchase money notes. But there is no corresponding credit on the note for either the $111 or $107.30. Bush was asked about the $111 in direct interrogatory propounded by plaintiff, and asked to state if he did not tell Casseday that the amount was not deposited as a credit on the note. He answered (by deposition) that he received the amount January 9, 1877, from the bank as a deposit placed there to his credit by Watson, and that his best impression is that it was a payment on the land. He states that there was correspondence between

him and Watson, in which Watson stated that he would make a deposit in the bank for him, and in this way he was induced to believe that the $111 was a payment on the land. He states further that he had never seen Casseday in his life, and that it was not possible that he could have told Casseday anything. Casseday, whose depositions were taken by plaintiff, was asked to explain the credit of $146 on the note.

His answer is: "We were pushing Dr. Watson for payment on the note, and he without notice to us, for his own convenience or to avoid payment of commissions, had made deposit with the Waco National Bank, and also forwarded some other money from Marlin, Texas, to E. W. Bush, for whom we acted; and on April 4 or 5 Mrs. Josiah Watson, wife of defendant, came to our office at Waco and exhibited to us deposit tickets and receipts, in all amounting to $146, which she claimed as a credit on the note held by us (Renick & Casseday), and being satisfied that the payment had been made to Bush, the credit was entered on the back of the note. The money not having been paid to us, but remitted directly to Bush, no corresponding entry was made on our books." It may be that the $146 included the receipt of Bush for the $107.30 or the $111 paid by deposit to Bush's credit. The receipt for the $35 could not be a part of the credit of $146, because it seems to have been paid by one Asa Elliott. Besides, the receipt is dated May 18, some time after the credit of $146, and is signed by Renick & Casseday, per R. W. Davis. The receipt to Elliott does not indicate that it was a payment by Watson, or that it had connection with the note sued on. It states that the amount is "to be credited on a note given to E. W. Bush for part of the Rebecca Edwards survey," and it may be that it can be identified as a payment on the note sued on. Bush had sold one Elliott a tract of land in the latter part of 1878 or first of 1879, but the $35 could not relate to that sale. Bush sold other land (100 acres), for which Dr. Watson sent him by express the purchase money ($300) all at one time, and Bush testified that the $111 was not a part of that amount; for the same reason the $35 could not have been a part of such amount.

The evidence may have satisfied the jury that the receipt for the $107, the deposit of $111, the receipt for $167.50 paid by Beard, and the $108.25 paid by Ferguson, are accounted for in the credits on the notes of $146 and of $275.75, and that the $35 had no connection with the note sued on. But there are two receipts, one to Bush for $161.80 and one to Flowers for $11.60, that are not explained so as to be applied to any other transaction, or to be embraced in any credits on the note. There is a credit on the note of $11.60, of date March 16, 1877, but the receipt for a like amount to Flowers is dated September 26, 1877. These receipts are unaccounted for by payments on the first note falling due, because all the payments thereon were in 1875 except the credit $46.86,

on March 16, 1877, when $100 was paid, satisfying the same in full, leaving $53.14 to be credited on the last note.

The receipts in question read as follows:

"WACO, McLennan County, Texas, September 26, 1877.

"Received September 26, 1877, from M. F. Flowers, of Bell County, Texas, the sum of $11.60 in full of his indebtedness to E. W. Bush on a certain note given to J. Watson for 104 acres out of the Rebecca Edwards survey in the edge of Bell and McLennan counties, Texas. This receipt is to act as a relinquishment of the vendor's lien held by E. W. Bush on said 104 acres of land.

[Signed]                                    "E. W. BUSH,
                          "By his Agents, Renick & Casseday."

"WACO, McLennan County, Texas, July 18, 1877.

"Received of E. W. Bush the sum of $161.80, gold, in full of last payment of a certain note dated December 1, 1874, for $197.75, gold, with 10 per cent interest from date till paid. Said note was given to J. Watson and held in trust by him for me as per agreement of the parties. Said note was in possession of said Watson, and being purchase money for 143½ acres of land out of the Rebecca Edwards survey on Deer Creek, in edge of Bell County, Texas. This receipt acts as a release of lien as far as said E. W. Bush is concerned.

[Signed]              "E. W. BUSH, per Renick & Casseday."

We may here state that a part of the land bought by Watson from Bush was agreed to be taken and paid for by Bush and Flowers and others, he making to them bonds for title, and reserving for himself only 116⅗ acres, they having aided in the first cash payment of $1200, and securing him by their note. It was also agreed, at least between Watson and his alleged copurchasers, that each was to pay for his separate survey and no more, and such agreement may have been made by parol by all the parties, Bush with the rest; but we are not now considering this question. Recurring to the foregoing receipts to Flowers and Bush, they evidence payments on the note sued on, the note first due by Watson having been previously paid in full. There is no credit on the note shown by the evidence that can embrace these receipts, none that correspond in date, amount, or in any other respect, so far as we are able to see. Casseday, it is true, testifies that every payment made on the note was entered as a credit thereon, but this is general and unsatisfactory. It does not explain what credit includes the amount of these receipts. A receipt may be disputed or impeached, and evidence tending to account for these payments as entering into indorsed credits would have been competent. Had it been shown that they were given under a misapprehension of the facts, or that the money was not in fact paid as stated, or that they related to other matters, or that they were in fact

not given, or not given by one having authority to do so, the evidence would be competent. These receipts are signed by Renick & Casseday as agents for Bush, they having authority to do so, and no one testifies that they, the very receipts themselves, are false. Casseday does not say so, nor does he attempt any explanation of them except to say that all payments were duly credited on the note. Such evidence does not invalidate the receipts. 1 Greenl. on Ev., secs. 212, 305. They are in no wise affected by the statement of Watson, testifying that "whenever any money was paid to Renick & Casseday they gave receipts for all money paid on the purchase money of the 980 11/24 acres of land." There was no denial that Renick & Casseday did not execute these receipts. It does not appear that the indorsed credits (except those noticed above) were not also receipted. While the jury may have had evidence explaining other receipts and alleged payments to authorize them in finding that they were accounted for by credits, there was not such evidence in regard to these. We do not think the jury was warranted in ignoring them, and that the court erred in refusing a new trial.

The following assignment of error is relied on by appellant: "The court erred in refusing the charge asked by the defendant as set out in defendant's bill of exceptions No. 5, by reason of which refusal the jury was not permitted to pass on the question as to whether the defendant Josiah Watson and his particular part of the land was or was not bound for the payment of the entire amount of the note sued on, and if not, whether he had paid his part of said note."

Without inquiring whether this assignment of error is sufficient upon its face to require notice (Railway v. McClain, 80 Texas, 85), we may at once say that there was no error in refusing the charge. The pleadings and the evidence made an issue of the kind mentioned in the assignment, that at the time the deed and the note sued on were executed there was a parol understanding between all the parties that the land was to be subdivided into small tracts and purchased by the several parties named, plaintiffs' purchase being only 116½ acres of the whole, and that when each of the purchasers paid for his designated part of the land it was to be released from the vendor lien note given by Watson and herein sued on, and such purchaser was to be responsible only for the price of his land at $3 per acre. But a charge recognizing and enforcing such a parol agreement as to Watson should not have been given, because the parol agreement would have entirely changed the written contract made by Watson and substituted another in its place. Other copurchasers are not before the court claiming equities growing out of their having paid part of the purchase money on the land. Their rights are in no way involved; they are not in court for any purpose. The written contract with Bush and Watson can alone be looked to; it bound him to pay the full amount of the note in clear and explicit terms, and it could not be changed by parol so as to relieve him of the

obligation. The rule is elementary, and this transaction is no exception to it.

The depositions of Casseday were taken in this case and read on the trial. Interrogatory 4 reminded the witness that his deposition had been taken before in the case, in which he gave what purported to be a copy from the books of Renick & Casseday of all entries showing payments of purchase money on the land, among which entries is one of payment of $50 as made by W. H. Beard to Miller Bros.; the witness is then asked to explain how the entry came to be made, and whether or not the amount was ever paid by Beard to Renick & Casseday. The answer is that the entry was made by the bookkeeper of Renick & Casseday, but witness states his recollection to be that it was paid to Miller Bros. The old depositions of the witness formally taken were found among the records of the case and defendant offered to read them. The plaintiff objected to their introduction, because they were taken by parties who had been dismissed from the suit, they had never been crossed by Watson, he had not been served with notice of them, and the plaintiff could not use them without his consent, and he had no interest in them. He had crossed the last interrogatories and had laid no predicate to impeach the witness, and could not use his former depositions for the purpose of impeaching him. The court sustained the objections. Defendant excepted, and now assigns the ruling as error, complaining that the plaintiff, having read a part of the depositions, should have been allowed to read the whole of them, and that they would have shown that the whole of the note sued on had been paid, etc. It does not appear that plaintiff used the depositions sought to be used, or read any of them in evidence, and in such case defendant, having failed to cross them, had no right to read them. Harris v. Leavitt, 16 Texas, 340; Brandon v. McNelly, 43 Texas, 77.

There was no error, as contended by assignment, in refusing to allow Watson to testify from a memorandum made up at his dictation by his attorney. The witness stated that he was unable to state the facts sought to be proved from his own personal recollection, but that he had referred to old letters, memoranda, and receipts (the letters on file in the case), and that one of his counsel had in his presence and at his dictation made up the memorandum by which his memory was refreshed "and from which he was able to answer." The original documents might have been used to refresh the witness' memory, but certainly not the notes made up from them. The opposite side had the right to see the originals and test the witness' memory from each entire instrument. Such documents may have been primary evidence, in which case they would have been the best evidence. 1 Greenl. on Ev., sec. 438; Hamilton v. Rice, 15 Texas, 386. A copy of an original memorandum made by the witness of numerous articles and their values may be used to awaken the memory of a witness. Railway v. Burke,

55 Texas, 342. The bill of exceptions to the testimony fails to show what the objections to the testimony were. In such a case the error, if any, can not be determined.

If there were other errors, as assigned, they are not likely to occur on another trial, and need not now be considered.

We conclude that the judgment of the court below should be reversed and the cause remanded.

*Reversed and remanded.*