### LESTER et al. v. ROBINSON.

### No. 8407.

Court of Civil Appeals of Texas. Austin.

Jan. 27, 1937.

Rehearing Denied Feb. 24, 1937.

N. T. Stubbs, of Johnson City, for appellants.

Thos. C. Ferguson, of Burnet, and White, Taylor & Gardner, of Austin, for appellee.

BLAIR, Justice.

Appellee A. Robinson, trustee in bankruptcy of the estate of W. O. Lester, sued appellant Elva Holland Lester and her husband, the said W. O. Lester, to cancel a deed from the husband to the wife, dated October 12, 1931, alleging that the conveyance was made to hinder, delay, and defraud creditors, because Lester was insolvent when it was made and because the consideration recited in the deed was fictitious and the value of the land conveyed was largely in excess of the debt claimed to be due by the husband to his wife. Appellants answered that even if Lester were insolvent, he had the right to prefer his wife as a creditor, and denied that the consideration for the conveyance was in part fictitious, or that the value of the land conveyed was in excess of the con-

sideration paid therefor. A trial to the court without a jury resulted in judgment canceling the deed; hence this appeal.

We have reached the conclusion that the findings of the trial court that the consideration recited in the deed was in part fictitious, and that the value of the land conveyed was largely in excess of the debt due by the husband to the wife, are so against the great weight and preponderance of the evidence as to require the reversal of the judgment.

The rule of law applicable is stated in 20 Tex.Jur. 377, 378, § 14, as follows: "The rule that an insolvent debtor may, in the absence of any law to the contrary, prefer one creditor over another, no more property being conveyed than is reasonably sufficient to satisfy the debt, applies as well to the preference of a creditor wife as to the preference of other classes of creditors, the property turned over to the wife being no more than is reasonably sufficient to satisfy the debt. Thus a husband may pay a debt owing to his wife by purchasing property and having the title made directly to her. And this is the rule where the debt has arisen through the appropriation by the husband of his wife's separate property, it having been agreed between the parties that the property was not to lose its separate character. The fact that the wife knew that her husband was insolvent, and that the effect of the transfer would be to prevent other creditors from enforcing their claims, would not in itself prevent her from receiving the preference. But, as in other cases where an attempt is made to prefer a creditor, transactions between husband and wife must be open and bona fide and not merely colorable." Numerous cases, cited in footnotes Nos. 6 to 11, support the text.

On October 12, 1931, Lester was the owner of and conveyed to his wife the 500 acres of land in suit; the recited consideration being $5,250 paid by the cancellation and satisfaction of a promissory note, executed by Lester to his wife, dated July 28, 1928, for $5,250, bearing 7 per cent. interest from date, and the assumption by grantee of a vendor's lien note for $1,000 against the land. On September 20, 1932, Lester filed his petition and was adjudged a bankrupt, and appellee was appointed trustee in bankruptcy, and later brought this suit. The findings of fact that are against the great weight and preponderance of the evidence are as follows:

First. That appellant Elva Holland Lester received from the estates of her parents only the sum of $4,547.75, and that the consideration for the note for $5,250, dated July 28, 1928, which was canceled and satisfied in consideration of the conveyance, was therefore in part fictitious.

The undisputed evidence showed that Mrs. Lester received $4,547.75 in cash from the estates of her parents. The uncontroverted evidence of both Mr. and Mrs. Lester showed that she also received certain horses, cattle, sheep, goats, and other personal property; and that all such money and properties were delivered to Mr. Lester with the understanding that he was to repay Mrs. Lester for same. That the bulk of the money and properties was received about the date of the execution of the $5,250 note, July 28, 1928, is not disputed. A memorandum of the money and properties and the amount or value thereof was kept by Mrs. Lester, which showed the total of money and personal properties to be $5,273.29; and Lester and his wife testified that the consideration for the $5,250 note was fixed in accordance with this memorandum. Some of the livestock received by Mrs. Lester was still on hand when this case was tried; and whether or not Mrs. Lester received the personal properties could have been easily proved or refuted, but appellee made no attempt to refute the claim. There was no evidence which even tended to show that when the $5,250 note was executed Lester was insolvent, and such note was made almost three years before the execution of the deed in question. Under such facts and circumstances, the trial court was not authorized to disregard the undisputed testimony of appellant that Mrs. Lester received both money and personal properties of the aggregate value of $5,250; and that the note, executed nearly three years prior to the execution of the deed in question, was executed in payment of such money and personal properties.

■ The rule applicable is that testimony which stands uncontradicted must be accorded verity and taken as true if it is not inherently improbable. That is, a jury or court has no right to ignore uncontroverted evidence to which no suspicion attaches, and especially is this true where it is corroborated by the facts and circumstances in evidence. No suspicion arose that Mrs. Lester did not receive livestock and other personal properties from the estates of her parents; nor that such properties did not have a value of several hundred dollars, which was intended to be paid by the $5,250 note, dated July 28, 1928, executed nearly three years before the deed in suit was executed. Poulter v. Miller (Tex.Com.App.) 221 S.W. 965; Shaw v. San Jacinto Realty Co. (Tex.Civ.App.) 16 S.W.(2d) 341; Albright v. Smith (Tex. Com.App.) 288 S.W. 178; Nobles v. Texas Indemnity Ins. Co. (Tex.Com.App.) 24 S.W.(2d) 367; Watson v. Miller, 82 Tex. 279, 17 S.W. 1053.

Second. That as to $1,600 of the money received by Mrs. Lester from the estates of her parents, she and her husband did not deal with each other as debtor and creditor, and there was no agreement for its repayment, but that Lester was permitted to use it in his business for many years without any agreement to repay it. Both Lester and his wife testified that he borrowed the money and was to repay it to his wife. The memorandum kept by Mrs. Lester listed this item, and it was included in the note for $5,250, dated July 28, 1928, which was executed about three years before the deed was executed, under the circumstances above detailed. 27 C.J. 563, 23 Tex.Jur. 187-189.

Third. That the land conveyed was, at the date of the deed, of the reasonable market value of $9,500, which was substantially in excess of the consideration received by Lester for the deed to his wife. The evidence showed that the $1,000 note which Mrs. Lester assumed, with interest due thereon, amounted to $1,080 on the date the deed was executed. The $5,250 note bore interest at the rate of 7 per cent. from date, July 28, 1928, and the interest and principal due on the note on the date of the deed was $6,428.85, thus making a total consideration of $7,508.85 paid for the land. Appellee's only witness testified on direct examination that the land was of the market value as of date of the deed of from $16 to $17 per acre, or $8,000 if $16, and $8,500 if $17 per acre. There was no testimony that the land was of the reasonable market value of $9,500 as found by the trial court. Appellee's witness further testified, in this connection, as follows:

"Q. Mrs. Lester came to you and wanted to make a loan to take up that Thousand Dollar indebtedness (Eveling lien), didn't she? A. Walter (W. O. Lester) talked to me about it once.

"Q. And when he did, didn't you tell him that you couldn't let him have over two or three dollars an acre on the land? A.. I don't know what I told him.

"Q. You don't know what you told him about the value of it? A. No, sir, I was just trying to discourage him. It didn't have any water or any improvements and it was not a unit, and I don't think that he could have gotten a loan on it at all."

Lester testified that Johnson told him he could get a loan of $2 or $3 per acre.

Several disinterested witnesses, who had known the land for many years and knew its market value in 1931, testified that its market value was from $2 to $10 per acre.

Appellee alleged the value of the land to be only $7,500, or "$6,500 in excess of any encumbrance thereon." No witness nor evidence of any character placed the value of the land at $9,500 as found by the trial court, so it is manifest that the valuation of $9,500 cannot stand.

The judgment of the trial court is reversed and the cause remanded.

Reversed and remanded.

### On Motion for Rehearing.

On rehearing appellee makes no attempt to justify the trial judge's finding that the reasonable market value of the land was $9,500. There was no evidence sustaining such value, and the findings of the trial judge show that he considered this wholly unauthorized value in rendering judgment.

■ Nor do we agree with the contention that a presumption of fraud arose by virtue of the fact the husband was insolvent when he conveyed the land to his wife, or because she knew of such insolvency. The rule quoted in our original opinion authorized the husband to prefer his wife as a creditor. This rule merely requires that the transaction be open and bona fide and not merely colorable. Nothing was concealed about the conveyance. Lester went to appellee, who had acted as trustee in bankruptcy for many years for the Federal District Court at Austin, and told him that he was broke and contemplated filing a bankruptcy petition, and asked if he might convey some land to his wife in payment of her money which he had

used. Appellee told him that unless the conveyance was made four months prior to the filing of the petition in bankruptcy, it would be regarded as fraudulent. Such is the provision of the Bankruptcy Law (11 U.S.C.A.). The conveyance was made more than eleven months before the petition in bankruptcy was filed, and the deed duly recorded.

■ Nor do we agree with the contention of appellee that a Court of Civil Appeals may not reverse and remand a cause for a new trial where the findings of the trial court were that the consideration recited in a deed was in part fictitious, in absence of any proof that it was so, and where the undisputed evidence of the husband and wife, corroborated by existing circumstances, showed that no part of the recited consideration was fictitious. In order to make such findings, the judge trying the case without a jury was necessarily compelled to find, although he did not do so specifically, that the $5,250 note, dated July 28, 1928, executed by Lester to his wife more than three years prior to the execution of the deed, was in part fictitious. The note purported a valid consideration. It was executed at the time Mrs. Lester received the bulk of her estate from her parents, and more than three years prior to the conveyance in question. Lester was not shown to be insolvent at the time. No motive or reason was shown as to why the note was executed at the time, except that the husband and wife were attempting to keep the wife's separate estate separate, and to fix the value thereof as agreed upon by the parties, and at a time when no creditor's interest was involved. And the rule is now settled that a court or jury trying the facts of a case may not "lawfully deny proper weight to undisputed facts with no suspicion cast upon them." Trinity Gravel Co. v. Cranke (Tex.Com.App.) 282 S.W. 798, 801; Miller v. Panhandle & S. F. R. Co. (Tex.Civ.App.) 35 S.W.(2d) 194; Sterling Bank & Trust Co. v. Ellis (Tex.Civ.App.) 75 S.W.(2d) 716; Texas State Mut. Ins. Co. v. Farmer (Tex.Civ. App.) 83 S.W.(2d) 411; Springfield Ins. Co. v. Wm. Cameron & Co. (Tex.Civ. App.) 96 S.W.(2d) 788.

Motion for rehearing is overruled.

Overruled.