JOHN SOWLES, JR., v. THE STATE.

No. 3712.   Decided October 30, 1907.

**1.—Theft—Money—Value—Evidence—Currency.**

Where upon trial for theft the evidence showed that the money alleged to have been stolen was a United States currency ten dollar bill, the value of the money stolen was sufficiently proved as an independent fact.

**2.—Same—Confession—Sufficiency of Evidence—Corpus Delicti.**

The rule now, as laid down by this court, is, that a confession may be used in making out the corpus delicti. However, in the case at bar the State did not rely upon a confession alone, and there was no reversible error. Approving Kugadt v. State, 38 Texas Crim. Rep., 681. Qualifying Attaway v. State, 35 Texas Crim. Rep., 403.

**3.—Same—Evidence—Declarations of Defendant.**

Where upon trial for theft the State was permitted to show a part of defendant's declaration when accused of the alleged theft, it was error to exclude the testimony of defendant's witnesses showing a part and parcel of the same transaction and declaration by defendant brought out by the State.

Appeal from the County Court of Henderson County. Tried below before the Hon. J. R. Blades.

Appeal from a conviction of theft of money under the value of $50; penalty, a fine of $50 and thirty days confinement in the county jail.

The opinion states the case.

*Miller & Royall,* for appellant.—On the question of value: Thompson v. State, 43 Texas, 268; Meyer v. State, 4 Texas Crim. App., 121; Antle v. State, 6 Texas Crim. App., 202; Martinez v. State, 16 Texas Crim. App., 122. On question of confession alone: Follis v. State, 46 Texas Crim. Rep., 202, 78 S. W. Rep., 1070; Harris v. State, 28 Texas Crim. App., 308. On question of rejected evidence as to defendant's statement, etc.: Williams v. State, 4 Texas Crim. App., 5; Shelton v. State, 11 Texas Crim. App., 36; Jackson v. State, 28 Texas Crim. App., 370; Gillian v. State, 3 Texas Crim. App., 132.

F. J. McCord, Assistant Attorney-General, for the State.

DAVIDSON, Presiding Judge.—Appellant was convicted of theft of $10. The evidence is that it was a ten dollar United States currency bill. While the evidence is not emphatic that it was a United States bill, yet that was the impression of the witness and is made reasonably to appear.

Contention was made that appellant was entitled to a charge instructing the jury to acquit because the value of the bill was not proved. If this could arise we are of opinion that it is reasonably proved as an independent fact, but it being United States currency, the mere fact that it was a ten dollar bill proves its value, and such has been the rule in this State since the case of Menear v. State, 30 Texas Crim. App., 475.

It is further urged for reversal that the court failed to instruct the jury that a conviction could not be had simply upon a confession of guilt. We do not believe that rule sought to be invoked applies to the facts of this case. The State's case, substantially is, that on the morning of and prior to the alleged theft a ten dollar bill had been taken in at the meat market and placed in a cash drawer in a separate apartment for receiving currency money; that thereafter Thompson, the alleged owner of the market and money, heard the bell of the cash drawer ring and turned around and saw appellant at or near the cash drawer, and asked him what he was doing at the cash drawer. Appellant replied, "Not me," and moved away. Appellant was then sent out about town to deliver some meat, his employment being to deliver meat for the market around town, and during his absence Thompson discovered that the ten dollar bill previously placed in the drawer had disappeared. Upon appellant's return he was charged with the theft of the money and in a qualified sense admitted taking the money by agreeing to refund, but stated that the owner, Thompson, had not treated him right. This is the State's case, in substance, as we understand the evidence. Under this state of case the State did not rely upon confession alone. The presence of appellant at the cash drawer, and what occurred there at the time Thompson discovered him and heard the noise, the conversation that occurred, etc., and the fact that the bill was gone, are circumstances independent of the confession, if appellant's statement be regarded as a confession. The rule now, as laid down by this court in the case of Kugadt v. State, 38 Texas Crim. Rep., 681, is that a confession may be used in making out the corpus delicti. The rule as laid down in the case of Attaway v. State, 35 Texas Crim. Rep., 403, is that where the corpus delicti has been shown, a confession may be used to connect the defendant with the offense or with the corpus delicti. The Attaway case, however, was qualified in the case of Kugadt and subsequent cases.

The serious questions in the case arise in regard to the ruling of the court in rejecting certain testimony, all of which is set out in several bills of exception. The State's case has been sufficiently stated as it

may have a bearing upon the rejection of the offered testimony. Kirk was placed upon the stand as a witness for appellant, and was asked if he was present on the Sunday morning that defendant is charged with the offense for which he is being tried, and if so state what was said and done by appellant and the State's witnesses Thompson and Baugh. After stating the object and purpose of offering this testimony, the facts expected to be shown are as follows: "On that Sunday Bob Love and I were going to the postoffice. Johnie (appellant) was over there at the meat market with the little go-cart that he was driving; the horse was standing in front of the cart; we heard him holloing as we went on to the postoffice and as we came back he was still holloing; he was calling Bob. I heard a lot of loud talking over there, and I told Bob to go over there, that maybe there was something the matter with Johnie. Mr. Thompson had the door fastened, and Mr. Baugh was standing at the door. Love went over there, and I heard Johnie ask him to loan him $10. Bob told the defendant that he didn't have the money with him, as witness had all the money, but that he could get the money from witness, and Bob asked him what he wanted with it, and defendant told him that they had accused him of stealing $10 from them, and that they were threatening to do him harm if he didn't pay it. Bob then came and asked the witness for the money, and the witness replied by asking if he thought that defendant would pay it back, and he said that he thought he would. The witness then let Bob have a $5 bill and $5 in silver. Bob Love then took the money around there and gave it to defendant and defendant repaid the $10." Mr. Thompson was on the stand in behalf of the State, and upon cross-examination practically the same facts in support of the above were sought to be elicited from him, and he would have testified in this connection that, "when the negro (meaning appellant) came back from delivering the meat that morning, I found out before he got back that he had gotten the money, I charged the defendant with having taken the money; he talked a little bit saucy to me and I told Mr. Baugh to go call Mr. Grayson, the constable, and have him arrested. I closed the door and intended to keep defendant in there until Grayson got there, but during the time some negro passed the door, and defendant asked him to loan him $10; the negro asked defendant if he would pay it back and he said he would; then Love paid the $10 to witness. Mr. Baugh and myself had the defendant shut up in the house and I had a long paddle. Mr. Baugh was guarding the door and each of us threatened to punish him if he didn't pay the $10."

It was also proposed to be proved by the witness Stovall that he was present when Bob Love loaned the defendant $10, and when Thompson was paid the same. He further testified that the parties had appellant shut up in the meat market, and Mr. Thompson had a long paddle or plank drawn on the defendant, and he and Baugh were threatening him, saying if he didn't pay the $10 they were going to punish him. The de-

fendant protested his innocence, but finally borrowed the $10 and paid the same to Mr. Thompson.

Bob Love would have testified that when he went to the defendant, that Thompson and Baugh had defendant shut up in the meat market and were after him about taking $10. Defendant asked the witness to loan him $10. Defendant protested his innocence, and claimed that he had not gotten the money, but rather than have trouble he would pay the $10 and defendant borrowed the money from witness and same was paid to Mr. Thompson. This witness remembered distinctly that Thompson had a stick or plank drawn on defendant and Baugh was at the door, and each of them were threatening to harm the defendant if he did not pay the $10. This testimony was rejected by the court on exception of the State. Why this ruling was had we do not understand. It was a part and parcel of the transaction testified by Thompson and Baugh for the State; so was immediately connected with it and grew out of the refunding of the money. The plain reading of our statute requires the introduction of this sort of testimony. This was favorable to appellant, and being a part and parcel of the very matter, conversation and transaction, brought out by the State, was admissible. Because of the rejection of this testimony, the judgment is reversed and the cause is remanded.

*Reversed and remanded.*

Henderson, Judge, absent.