## D. E. TABOR V. THE STATE.

### No. 4147. Decided January 22, 1908.

**1.—Robbery—Jury and Jury Law—Special Venire—Sheriff's Return—Postponement.**

Where upon trial for robbery, during the empanelment of the jury, the defendant asked the postponement of the trial until two certain jurors marked on the special venire list by the sheriff's return as served, but who did not answer to their names when called, could be brought into court, or to quash the special venire, which motion was overruled; and thereupon the two jurors, after others had been selected on the jury, came into court, and testified that they had not been summoned; they were then qualified as jurors, and peremptorily challenged by the State. Held, that even if these two jurors had actually been summoned, the court was not required to delay the trial on account of their absence, but could have issued attachment; but as the jurors were brought into court and challenged by the State, the defendant could not complain.

**2.—Same—Evidence—Res Gestae—Theft of Other Property—Limiting Testimony.**

Upon trial for robbery, where the property alleged to have been taken consisted of paper money of the United State, which was taken by force by means of an assault upon the express messenger on a moving train, there was no error in admitting testimony that three bills of exchange which were traced to the possession of such messenger, disappeared at the same time that the alleged robbery and the taking of said money occurred, although defendant was not charged in the indictment with the robbery of said bills of exchange. This was part of the res gestæ; and the court was not required to limit such testimony.

**3.—Same—Circumstantial Evidence.**

Upon trial for robbery there was no error in admitting in evidence the conductor's card or pass, shown to have been issued to defendant and used by him, and found in his possession in a mutilated condition after the robbery.

**4.—Same—Attorney and Client—Evidence—Argument of Counsel.**

Where upon trial for robbery it appeared that at the time defendant was arrested, certain grips belonging to him were surrendered by his landlady to his attorney in defendant's absence, and the State was not able to show by direct evidence that defendant directed his attorney to get these grips, but identified them as those belonging to defendant, which he had left with his landlady. Held, there was no error in admitting this testimony and permitting State's counsel in his argument to refer to the grips and the fact that he was not able to show the contents thereof; and this, even if it be conceded that defendant's attorney under his privilege as such, could refuse to disclose the contents of said grips. Following Mercer v. State, 17 Texas Crim. App., 452; Armstrong v. State, 34 Texas Crim. Rep., 248.

**5.—Same—Evidence—Original Books of Entry—Copies—Memorandum—Harmless Error—Notice—Bill of Exceptions.**

Where upon trial for robbery, the State over the objection of the defendant was permitted to introduce in evidence by a number of express agents' testimony, that they had put up on the day preceding the robbery along the route of the train, various packages containing money; that they were not able independently of their books to state the amount of money put up by them or the character and the denomination of the bills, but that they had examined the Express Company's books and had made a copy therefrom, showing the amount of money sent in the packages and the denomination and character of the bills, and they referred to the copy so made, in order to enable them to testify as to the denomination of said bills. Held, that inasmuch as the conviction did not rest upon these bills, but upon others which were circumstantially identified and found in the possession of the defendant, that the admission of the above testimony was harmless error. Besides the bill of exceptions did not show that notice was given to produce these

books, or how they would have aided defendant in cross-examination, or that there were any inaccuracies in the copies produced.

**6.—Same—Charge of Court—Serious Bodily Injury.**

Where upon trial for robbery, the evidence showed the intent of the robber to inflict serious bodily injury, there was no error in the court's charge in defining serious bodily injury, even if it was not full enough in that respect.

**7.—Same—Charge of Court—Punishment—Defendant as Witness.**

Upon trial for robbery there was no error in the court's charge in stating the punishment for the offense charged; nor with reference to appellant's right in not testifying.

**8.—Same—Charge of Court—Credibility of Witness—Impeachment.**

Upon trial of robbery where the State upon cross-examination of defendant's witness brought out the fact that the witness had been charged with murder and robbery, the court correctly charged the jury that this testimony simply affected the credibility of said witness.

**9.—Same—Charge of Court—Alibi.**

Where upon trial for robbery there was no affirmative testimony on the part of defendant tending to prove an alibi, but the State was only able to show his presence at the commission of the crime, circumstantially, and the tendency of defendant's testimony was to put himself elsewhere, the court was authorized to charge on alibi, and there was no error.

**10.—Same—Circumstantial Evidence—Recent Possession—Charge of Court.**

Where upon trial for robbery, the evidence showed that when defendant was arrested about one month after the robbery, that he was found in possession of some of the money taken at the robbery, the court was not required to instruct the jury that the possession of the money found on defendant after the robbery was not such recent possession as would authorize the jury to regard such possession as a circumstance against him.

**11.—Same—Sufficiency of Evidence.**

Where upon trial for robbery the evidence reaonably identified some of the money taken at the time of the robbery, which was found in defendant's possession at the time of his arrest about one month after the robbery, together with other circumstances in the case showing his guilt, the verdict was sustained.

**12.—Same—Verdict Responsive to Indictment—Deadly Weapon—Charge of Court.**

Where upon trial for robbery the indictment charged a robbery by the use of deadly weapons, and also used some expressions to indicate a charge of simple robbery, and the court instructed the jury on both robbery by assault and robbery with deadly weapons, and the jury found a verdict for simple robbery and gave the punishment for that offense, the verdict was responsive to the indictment and the court's charge, and there was no error.

Appeal from the District Court of Bowie. Tried below before the Hon. P. A. Turner.

Appeal from a conviction of robbery, punishment, imprisonment in the penitentiary for life.

The opinion states the case.

*Nat B. Jones,* and *Newton & Ward,* for appellant.—On question of empaneling jury: Osborne v. State, 23 Texas Crim. App., 431; Moody v. State, 43 Texas Crim. Rep., 168; Bates v. State, 19 Texas, 123; Thurston v. State, 18 Texas Crim. App., 26; Cahn v. State, 27 Texas Crim. App., 709; Hudson v. State, 28 Texas Crim. App., 323. On question of contemporaneous taking: McGlasen v. State, 37 Texas Crim. Rep., 620; Nixon v. State, 31 Texas Crim. Rep., 205; House v. State, 16

Texas Crim. App., 25; Kelly v. State, 18 Texas Crim. App., 262; Holmes v. State, 32 Texas Crim. App., 360; Alexander v. State, 21 Texas Crim. App., 406; Harwell v. State, 22 Texas Crim. App., 251. On question of limiting testimony: Mallory v. State, 37 Texas Crim. Rep., 482; Thornton v. State, 36 Texas Crim. Rep., 118. On question of books of original entry: Kimbrough v. State, 28 Texas Crim. App., 367; Holmes v. Gayle, 1 Ala., 517; Watson v. Miller, 82 Texas, 279; Rice v. Ward, 93 Texas, 532. On question of attorney and client: Went v. Lloyd, 10 House of Lords' Cases, 589. On question of verdict not being responsive to indictment and charge of court: Buster v. State, 42 Texas, 315; Miles v. State, 3 Texas Crim. App., 58; Guest v. State, 24 Texas Crim. App., 530.

*F. J. McCord,* Assistant Attorney-General, for the State.—On question of introduction of copies of original books of entry: Favers v. Bowers, 33 S. W. Rep., 132; Railway v. Burke, 55 Texas, 323; Bevers v. Pacific Express Company, 4 Texas Civ. App., 287; Watson v. Miller, 82 Texas, 279; Hamilton v. Rice, 15 Texas, 382. On question of empaneling jury: Spencer v. State, 48 Texas Crim. Rep., 580; 14 Texas Ct. Rep., 594.

RAMSEY, JUDGE.—In the record of this case we find an opinion prepared by our late associate, the lamented John N. Henderson, of date October 23, 1907. On account of his unfortunate sickness and untimely death, this opinion was never brought into consultation. It remains among the papers, however, a monument of his industry, painstaking and devotion to duty, notwithstanding his low state of health. We have carefully examined this opinion, and approve it. It contains intrinsic evidence of the most careful and patient investigation. We have reviewed the voluminous record in the light of this opinion, and aided by briefs of counsel for appellant. If we should ourselves write an opinion in the case, we could have little occasion to change this one. It decides correctly the issues raised, and properly disposes of the case. We therefore, direct that this opinion be and the same is hereby in all things affirmed, approved and adopted as the opinion of the court, and preserved as a monument to the memory of our deceased brother.

"Appellant was convicted of robbery, and his punishment assessed at confinement in the penitentiary for life.

"The case is one of circumstantial evidence and a summary of the facts show on the part of the State that W. J. Grissett, the prosecutor, was express messenger in the employ of the Pacific Express Company and that his route was from Waco to Texarkana on the Cotton Belt. The robbery occurred on December 1, 1906, near a station called Red Water, some ten or twelve miles west of Texarkana. Pittsburg is about forty miles east of Red Water, and is a point at which all the remittances by express are concentrated and come into the possession of Grissett for delivery at Texarkana. The indictment alleges that appellant

committed the robbery by assault and by violence and by the use of a deadly weapon, and that he took from the possession of Grissett $3,600 in money, same being paper money of the United States and $4,991 other money, all of the aggregate value of $8,591. The robbery was committed about nightfall on the 1st of December, 1906, while the train was running, and evidently shortly after it left Red Water station. The proof shows that appellant was on the train very shortly before the robbery was committed, having taken the train at Pittsburg or at some small station after passing there. He was seen in the express car once or twice before the robbery, under suspicious circumstances; but he was not seen on the train subsequent to the robbery. It was not known on the train that robbery had been committed until the train arrived at Texarkana; and Grissett, not showing up, the trainmen went into the car to look for him and discovered blood on the floor and evidence of foul play. Parties went down the road to Red Water, but before they arrived there, the body of Grissett was found near the track; his head was crushed, evidently with some blunt instrument, but he was still alive. He was taken, first to Red Water, then subsequently brought to Texarkana, where he remained in the hospital some month or more; and, although but little hope for his life was entertained at first, he recovered. The first seen of appellant after the robbery was at Texarkana that night. He appeared about nine or ten o'clock at his boarding house. Grissett, who was the only person in the car at the time the robbery was committed, states that he had just left Red Water and was getting ready to turn over his freight at Texarkana, had his safe open and some packages before him, when someone hit him from behind on his head, which was the last he knew. It appears that shortly after the robbery, appellant was suspicioned and was watched and he was arrested at San Antonio on the 21st of December thereafter. The State introduced in the meantime a number of suspicious circumstances in connection with his conduct showing that he went by a number of aliases. At the time of his arrest at San Antonio he had arrived there two or three days before and was making inquiry with reference to the purchase of real estate and claimed to have some $8,000 or $9,000, about the amount of which the express agent was robbed. He stopped at a Mrs. Cherry's, and left his trunk and two valises; but at the time of his arrest he was on the street and was carried direct to the jail and there, being searched, some $3,600 in currency money, mostly large bills, denominations $100 and $50, corresponding to those shown to have been in possession of the express agent, Grissett, were found on his person. Subsequent to his arrest, when the officer went to get his grips it was found that they had already been turned over by Mrs. Cherry to appellant's attorney, and the contents of these were not disclosed. The State's case, though of a circumstantial character, is strongly supported by the testimony.

Appellant during the empanelment of the jury, made a motion to postpone the case until two certain jurors were brought in court, or to

quash the special venire because they were not present. The matter came up in this wise: L. S. Lambert was the twenty-sixth juror on the list, and L. D. Jackson was the seventy-fifth. When the names of these jurors were reached in regular order, they failed to answer, and it was alleged that they had not been served and that their names being in the list of those that were served, was a mistake on the part of the sheriff. Appellant objected to proceeding, as above stated; his objection was overruled, and the court proceeded in the empanelment of the jury. Subsequent to this, and after appellant had been required to pass on other jurors, those two jurors were brought in and they testified that they had not been in truth and in fact summoned in the case. They appear to have then been qualified as jurors and the district attorney challenged both of said jurors. Appellant assigns this as error and refers us to a number of cases to sustain his contention. The case referred to which is most in point, is that of Osborne v. State, 23 Texas Crim. App., 444. In that case, which was a special venire case, it appears that one Jack Craig stood eighth on the list, his name being called and he not answering, the sheriff announced to the court that said writ as to Craig was a mistake; that he had never been summoned. The court thereupon proceeded to organize the jury from the remainder of said special venire. Appellant objected to proceeding, on the ground that the copy which had been served upon him contained Craig's name as one of the jury drawn and served, and that the sheriff's return on the venire did not show the diligence exercised by the sheriff to summon, or the cause if any, why he did not serve, and that on the contrary the said return and service upon this defendant shows said juryman to have been summoned, when in truth and in fact it appears that he had not been summoned at all. Conceding that case was correctly determined, which we are inclined to doubt, still there is a difference between the facts connected with that juror and the two jurors in this case. Craig was never brought into court. Here both of the jurors were brought into court and were tested and challenged by the State. Even if these two jurors had actually been summoned, the court would not have been required to delay the case on account of their absence, but could have issued attachments and had them brought into court and subsequently tested. Here the jurors, as stated, were brought into court, and the State issued a challenge on each. There was no error in this proceeding of which appellant can complain. Campbell v. State, 30 Texas Crim. App., 645.

Appellant excepted to the action of the court in permitting the State's witness, J. W. Hogan, treasurer and paymaster of the Cotton Belt Railroad, to testify that he put up in one express package, three bills of exchange, as follows: One for $10,959.37; one for $13,959.80, and one for $23,180.36; and that he delivered said express package containing said bills of exchange to Grant Hasslett; and then other witnesses were introduced tracing these bills on the night of the 1st of December, 1906, into the hands of W. J. Grissett, express agent. Appellant objected to

this testimony on the ground that he was not charged in the indictment with robbery of said bills of exchange but was charge with taking money from said Grissett, and the said evidence was irrelevant and immaterial and was calculated to and did prejudice defendant in arousing the passion and prejudice of the jury, not only of defendant's guilt, but in enhancing his punishment.

Of course, it is not contended that appellant was charged with the robbery of said bills of exchange, nor that same were, subsequent to the robbery, found in his possession, there being no testimony to that effect. But it occurs to us that the fact that these bills of exchange were in the possession of Grissett on the night of the robbery, though not subsequently found in possession of appellant, and as for that matter they never have been discovered, still this would not render the testimony inadmissible. The fact that the express agent on that night had these bills of exchange and that all or the greater portion of the valuables in his possession were taken by the robber, and that these bills were evidently taken, inasmuch as they disappeared and have not since been found, it seems to us would constitute them a part of the res gestæ of the transaction. They were unquestionably taken by the robber, whoever he was, and were either concealed or have been destroyed. It would hardly be questioned if it were shown that A had knocked down B, and that he had robbed him of certain moneys, that at the time B also had a valuable pin, and that it disappeared, but had not since been found, would not render the facts concerning its disappearance inadmissible in evidence; that A had taken the pin would be very strongly inferred from the circumstances, and if charged with the robbery thereof, we apprehend the proof would be sufficient to convict him. We think that this would be legitimate testimony against appellant, though not for the purpose of convicting him of the robbery of said bills of exchange. We take it that there was no danger of conviction for the robbery of said bills of exchange inasmuch as the jury were, in the charge of the court, confined to the robbery of the money. Nor do we believe that the court was required to limit the effect of this testimony. It can hardly be said that appellant's punishment was enhanced on this account. If the State's theory be true, he not only robbed the express agent of thousands of dollars, but he attempted in the most brutal manner to murder him, and threw his body out from a moving train, no doubt believing he was dead. The jury gave him only a life imprisonment. The bills of exchange certainly added nothing to the enhancement of the penalty. The cases referred to by counsel to support their contention we do not think are in point. Of course, theft of other property on another occasion would not ordinarily be admissible; but it is always held that where property was taken on the same occasion, though not charged in the indictment, it is a part of the res gestæ, and is admissible in evidence. In some cases where there is danger of conviction for the theft of other property, or the testimony regarding said other property might enhance the punishment, the court should limit the

effect of such testimony; but, as heretofore stated, it does not occur to us that there was any necessity on the part of the court to limit the testimony with regard to said bills of exchange.

The State introduced a conductor's card, or pass, shown to have been issued to appellant, and to have been used by him. This card was also shown to have been mutilated or changed, evidently subsequent to the robbery. We think this was admissible. The objection that it was issued after the offense was committed is not tenable inasmuch as the date of the card is not shown. This book was on defendant when he was arrested and could be used as a circumstance against him.

We hold that it was permissible to prove, as was done by the State, that the grips belonging to appellant were surrendered by Mrs. Cherry to Nat B. Jones. The fact that appellant was absent when the surrender was made, and the State was not able to show by direct evidence that appellant directed Jones, his attorney, to get the grips, was immaterial. The grips were identified as those of appellant which he had left with Mrs. Cherry at his lodging house.

And in this connection we further hold that under the circumstances it was not error for counsel for the State to refer to the grips, and the fact that he was not able to show the contents thereof. If it be conceded that appellant's attorney under his privilege as such could refuse to disclose the contents, still this would afford no reason why the State's counsel could not refer to the manner in which said grips were spirited away, as a reason why he was not able to make proof of the contents.

It has been held that a wife can not be introduced as a witness against her husband. This furnishes no reason why comment can not be made on the failure of a husband to produce his wife as a witness where it is evident that she may know some material fact that is favorable to him. Mercer v. State, 17 Texas Crim. App., 452; Armstrong v. State, 34 Texas Crim. Rep., 250; Smith v. State, 3 Texas Ct. Rep., 357; Lockland v. State, 8 Texas Ct. Rep., 204. By analogy it occurs to us that, although the appellant may take advantage of a privileged communication to his lawyer to exclude it, still reference could be made to the matter. It may be further observed that the bill shows some provocation on the part of appellant's counsel inducive of the reference.

The State introduced a number of witnesses who testified that they were agents of the express company at various points, and on the 30th of November, and on the day. preceding the robbery, they put up on the route between Gatesville and Texarkana, various packages containing money; that they were not able independently of their books to state the amount of money put up by them or the character and denomination of the bills; but several of these witnesses stated that before coming to court they had examined the express books in their respective offices, and had made a copy therefrom, showing the amount of money sent in the packages, and the denomination and character of the bills; and they referred to the copy so made, in order to enable them to testify as to the denomination of said bills. This testimony was not only objected to.

but a motion was made to strike same out on the ground that the memorandum (which was his copy of the original entries) was not the original, and that the witnesses had no independent memory in regard to the transaction. And in such case, counsel contended that it was the original entry that was the testimony and not the witness who had no recollection of the fact; and that the witness was not merely using the copy to refresh his memory; and he insisted that the original book of entries should be present in order that he might cross-examine the witness with reference thereto. We understand appellant to concede that a witness may refresh his recollection by a copy of the original entries which he knows to be correct, and he refers us to Connell v. State, 45 Texas Crim. Rep., 142; 75 S. W. Rep., 512; Riley v. State, 44 S. W. Rep., 498; White v. State, 18 Texas Crim. App., 57. But he insists that that was not what was done here; that the witness' memory was not refreshed by the memorandum, as it gave him no independent recollection of the transaction, but he merely knew from the original entry that same was correct. In support of his contention he refers us to a number of authorities, to wit: 1 Greenleaf on Evidence, secs. 436, 437; Wigmore on Evidence, 760, 763, 749 and 754. He also cites us to a case decided by the Court of Civil Appeals, from which he quotes as follows: "The true view seems to be that a writing which fails to refresh the memory of a witness, but which he knows to be a correct transcript of a fact known to him when the writing was made and since forgotten, is thus made an essential part of his testimony; and when the oral testimony of the witness is offered in proof of such fact, the opposite party may require the production of the writing, especially in view of the right of cross-examination." See Ry. v. Garlington, 14 Texas Ct. Rep., 741. He also refers to Watson v. Miller, 82 Texas, 279; Rice v. Ward, 93 Texas, 532. To the same effect he also refers to the cases of Hamilton v. Rice, 15 Texas, 382; Ry. v. Burke, 55 Texas, 323; Favors v. Bowen, 33 S. W. Rep., 131; Land Co. v. Hanford, 4 Texas Civ. App., 286.

So we take it that the true rule is as stated above. As heretofore stated, a number of the items showing contents of packages received by Grissett were proven up by copies from the books of the express agents. These slips, or copies, were not used to refresh the respective witnesses' memories, because they did not have that effect, as the witnesses were not able to speak independently as to the denominations of the bills, after viewing the copies or slips, but were merely able to state that they were copies from the books, and that the books showed the transaction correctly, and stated the denominations of the bills. So that it must be conceded that as to some eight or ten transactions of this sort, the court committed an error in admitting the testimony. But the question recurs, was the admission of this testimony calculated to injuriously affect appellant? Now, it will be noted that none of these amounts, shown by this character of testimony, were found with appellant, or served to identify him in the transaction. It will be recalled that there was found on appellant's person at the time of his arrest, some $3,600

in currency money; twenty-four $100 bills; twenty-two $50 bills; two $20 bills; one $10 bill, and eleven $5 bills; and some small amount in silver. That is, $3,500 of this amount was in large bills—$100 and $50 bills. It will also be recalled that the State proved by competent testimony that $3,300 was put up in one package at Waco; that of this amount, $3,000 was in $50 and $100 bills. It will also be recalled that D. H. Wylie, another agent, put up four $100 bills and two $50 bills. This accurately accounts for the $3,500 in large bills. It is also shown with reference to these bills, or the most of them, that they had stitch holes or needle holes through them; caused from being put up as express packages are required to be put up. Furthermore, the record absolutely fails to give any reasonable account as to how appellant should have procured this money, save and except as the fruits of the robbery. Said bills were of unusually large denominations, and that appellant should have had them in possession under the circumstances, was a strong inculpatory fact against him. Not so with reference to the other packages of small denominations which were not traced to appellant's possession. Now, as stated, with reference to bills of exchange, they were traced to prosecutor Grissett's possession. The fact that he may have had a great deal more money, and there is an abundance of legitimate testimony to that effect (and besides this, the court may have improperly admitted testimony showing that he probably had more money than was found on his person), it does not occur to us that it would make any difference, either as an aid toward securing his conviction, or enhancing his punishment. The bills that were introduced in evidence and which serve to identify him with the transaction as the robber, were in fact the evidence which affected him and tended to show that he committed the offense. That the money is not accounted for could have had very little, if anything, to do with the jury in arriving at their verdict in regard to identifying appellant as the perpetrator of the offense or as aggravating his punishment. If one bill was thoroughly identified by testimony as being in the possession of Grissett at the time of the robbery, and that was recently thereafter found in possession of the defendant; and he failed to account for his possession of the same in a manner reasonably consistent with his innocence, it would operate as a very material factor in producing in the minds of the jury a conviction of his guilt; but the fact that Grissett may have had any number of bills which were not identified as being in his possession on that night, and were not subsequently traced to the possession of appellant after the robbery, would evidently have but very little, if any, effect in the minds of the jury in identifying appellant as being the person who committed the robbery. As heretofore stated, the enormity of the offense and the diabolical means used in accomplishing it, unquestionably entitled the appellant to the penalty received by him, if not to a much greater penalty. Therefore, we hold, if it be conceded that certain testimony with reference to express money packages was improperly admitted, that it was not reversible error.

We might remark in this connection, that in a number of instances, witnesses who testified in that connection used slips, stating that they used the slips to refresh their memory and that after using same they had an independent recollection of the transaction. Of course, all this testimony was admissible. This related to packages which contained a number of small bills. It may be further observed with regard to the testimony of said witnesses, who introduced copies of their books in connection with their testimony, and then were not able to testify independently as to the transactions, that the authorities all seem to place the proposition requiring the production of the books, on the idea that the books were the primary and best evidence, and they should be produced in order to facilitate appellant in the cross-examination of the witnesses with reference to the entries in the books. This would apprehend some notice and none was given in this case; and besides, it is not even suggested how the production of the books may have aided the cross-examination, or that there was any inaccuracies in the copies produced.

Appellant complains of the court's charge in defining serious bodily injury. We do not believe, if it be conceded that it is not full enough in that respect, it could possibly have injured appellant, because there can be no question both as to the intent on the part of the perpetrator of the robbery to inflict serious bodily injury and the infliction of serious bodily injury. There was no error with reference to the court's stating the punishment in connection with the charge in case the jury found appellant guilty, nor in the charge given with reference to appellant's not testifying in the case. The statute on the subject was in effect given to the jury.

Appellant complains of the action of the court in the tenth paragraph of the charge with reference to the witness Burkett, as follows: Burkett was introduced by appellant and on cross-examination admitted that he had been charged with murder and robbery. The court instructed the jury in effect that they could not consider same as original evidence in the case; but they were authorized to consider it in passing on the credibility of said witness Burkett and in weighing his evidence, but that they could consider it for no other purpose. It does not occur to us that this charge is erroneous, but on the contrary properly directed the attention of the jury to how they might consider the impeaching evidence.

We think the court was authorized to give the charge on alibi testimony. While it may be conceded that there was no affirmative testimony on the part of appellant tending to prove an alibi, yet the State was only able to show his presence circumstantially. His presence at or about the time of the alleged robbery was shown to be on the train; and after the robbery, without showing how he reached there, his testimony showed his presence in Texarkana at his boarding house a very short time after the robbery; and it may be said that the tendency of his defense was to put himself elsewhere. And we think the court was authorized to give the charge on alibi, and that the charge given was not error.

The court was not required to instruct the jury that the possession of the money found on appellant after the robbery, was not such recent possession as would authorize the jury to regard the possession as a circumstance against him. We do not agree with this contention as a matter of fact, as it occurs to us that the possession of the money was such recent possession as authorized the jury to look to same as a fact, in considering the case against appellant; but certainly the court was not authorized to instruct the jury on this subject, the instruction on circumstantial evidence being sufficient.

Appellant contends that the verdict of the jury is not supported by the testimony. We do not agree to this contention. We think the facts, though of a circumstantial character are ample to support the verdict.

Appellant contends that the verdict of the jury is not responsive to the indictment and to the charge of the court and cannot be sustained. The indictment certainly charges a robbery by the use of a deadly weapon, and there are some expressions in it that also indicate that it charges a simple robbery. The language of the indictment is as follows: * * * "did then and there unlawfully make an assault on W. J. Grissett with his hands and with a bludgeon and with a blunt instrument of some kind, to the grand jurors unknown, and which cannot be ascertained; the said bludgeon and the said blunt instrument being then and there each a deadly weapon; and the said P. E. Tabor did then and there strike and wound said W. J. Grissett with said deadly weapons, and did then and there by said assault and by violence to the said W. J. Grissett, and by the use of said deadly weapons, fraudulently and without the consent of said W. J. Grissett, etc."

Now, an assault with his hands and by the use of violence and an assault also with a deadly weapon used conjunctively may be an allegation of both a robbery with deadly weapons and a simple robbery. However, appellant concedes that an assault by the use of a deadly weapon would also include and authorize a conviction for a simple robbery. The court instructed the jury on both phases of the case, that is, robbery by assault and robbery with deadly weapons. In the fifth paragraph of the charge, the court defines robbery with deadly weapons; and in the seventh paragraph, the court told them that if they found him guilty of robbery with deadly weapons, they would assess his punishment at death or confinement in the penitentiary for any term not less than five years; and gave them in that connection this form of verdict: "We, the jury, find the defendant, P. E. Tabor, guilty of robbery as charged in the indictment. We further find that he used a deadly weapon in the commission of said offense. We assess his punishment at * * *."

In the eighth paragraph of the court's charge, he instructs the jury: "Should you find the defendant guilty of robbery, but if the evidence fails to satisfy you beyond a reasonable doubt, that the defendant used a deadly weapon, as charged, in the commission of said offense, then you will assess his punishment at confinement in the penitentiary for life, or for a term not less than five years and the form of your verdict will

be: 'We, the jury, find the defendant, P. E. Tabor, guilty of robbery and assess his punishment by confinement in the penitentiary for * * *.' "

The verdict of the jury in response to these charges is as follows: "We, the jury, find the defendant, P. E. Tabor, guilty of robbery and assess his punishment by confinement in the penitentiary for life. R. A. Bartlett, foreman of the jury." The verdict of the jury was responsive to the court's charge for simple robbery, and gave the punishment for that offense. The fact that the jury found appellant guilty of robbery and assessed his punishment as instructed by the court at a penalty authorized for simple robbery, and not as authorized for robbery with deadly weapons, we think shows accurately that they understood the charge of the court and found him guilty as authorized by the court, of simple robbery. We accordingly hold that the verdict is sufficient.

There being no errors in the record, the judgment is affirmed.

*Affirmed.*

[Motion for rehearing overruled, February 19, 1908, without written opinion.—Reporter.]