CLARENCE WATSON V. STATE.

No. 24629. February 15, 1950.
Appellant's Motion for Rehearing Denied (Without
Written Opinion) March 22, 1950.

*Jack W. Knight,* and *Jim H. Letts,* Houston, for appellant.

*A. C. Winborn,* Criminal District Attorney, *E. T. Branch,* Assistant Criminal District Attorney, Houston, and *George P. Blackburn,* State's Attorney, Austin, for the state.

WOODLEY, Judge.

Appellant was convicted of the offense of robbery of Mamie Cleveland by assault, and his punishment was assessed by the jury at five years' confinement in the penitentiary.

On the morning of April 10, 1949, Mamie Cleveland was found in her home dead, her body lying in bed covered with a blanket, her footlocker containing $127 missing.

In his oral and written confessions, introduced in evidence without objection, appellant gave a detailed account of his association with Mamie Cleveland on Saturday afternoon, April 9, 1949. He said that he had seen her get money out of the footlocker to make change for Connie D. Adams.

Regarding his last trip to Mamie's apartment that night, he said in his confessions: "When we got back to Mamie's house, I couldn't wake her up, so I went around on the side of the house, and pulled the screen off of the window and pushed the window up, and reached in and shook Mamie while she was asleep on her bed. I asked her how about going to Galveston and she asked me how about coming in. She got up and opened the door and let me in. She laid back down on the bed. I was sitting on the side of the bed and I reached over and pressed my thumbs against the veins in her neck. She seemed to pass out and got limber. I pulled the cover up over her head."

He further confessed that he had then taken the footlocker and contents and had removed the money after breaking the lock by dropping the footlocker, and had given Connie a part of it.

Appellant did not testify on the trial.

The contention is made that the evidence is insufficient to corroborate the confession, that is, to establish the corpus delicti of the offense of robbery. For this reason, it is necessary that the evidence be detailed at some length.

Aside from the oral and written confessions of appellant, the evidence shows the following:

Appellant, a man of family, had been keeping company with Mamie Cleveland for about two years. He frequented her apartment which was occupied by her and her two children, a daughter Dorothy Nell, 19, a son, 17, and a grandchild.

The apartment consisted of two rooms, Mamie Cleveland sleeping in one and her two children and her grandchild occupying the other.

In Mamie's room was a small footlocker trunk. In the trunk was a green leather sewing kit or folder containing $127, which she was saving to pay on a lot she had bought.

About 4 P. M. on Saturday, April 9, 1949, appellant was present and saw Mamie get money from the trunk and change a ten dollar bill for his friend Connie D. Adams.

On that afternoon appellant asked Mamie to lend him $15, but she told him that she had no money except the money she had saved to pay on a lot she bought.

About two weeks previously, appellant had given Mamie a pistol to sell or pawn for him, but she returned the pistol after an unsuccessful attempt to comply with his request.

Appellant left the apartment about 6:30 P. M. Mamie left some time thereafter and returned home shortly after midnight. Upon her return she opened a can of beets, and after eating the beets, retired.

At all times Saturday she appeared to be in a good condition of health. About 4 o'clock the following morning (Sunday,

April 10, 1949), appellant knocked on Mamie's door, and getting no answer raised the window. Mamie then got up, turned on the light, and let appellant in. There was some conversation thereafter between appellant and Mamie. He stated that a fellow named "D" was with him. He asked Mamie to go to Galveston with him.

No other conversation or noise was heard by the daughter, Dorothy Nell, who slept in the adjoining room, only a few feet away. She got up about 5 or 5:30 A. M., closed the door, and went back to bed and to sleep.

Upon arising about 9:30 A. M. Dorothy Nell went into her mother's room. She noticed that the footlocker was gone; that the blanket was lying over her mother's head. She removed the blanket and found that her mother was dead.

She testified:

"My mother was lying on the bed in a crooked position like this." "One of her legs was up like this * * * and one of her arms was up and one arm was down by her side.Her left leg and arm was up. I did not see any wounds or bruises on my mother's body. I looked my mother over and did not see anything that looked like wounds or bruises on her."

The officers were notified and given a description of the footlocker that was missing.

Connie D. Adams, who got the change from Mamie during the afternoon, testified for appellant. According to his version, he drove appellant to Mamie's apartment, and remained in appellant's car with another boy, O. C. White; he was asleep and did not know the time except that appellant returned to the car shortly before dawn, and it was after midnight when they arrived.

He disclaimed any knowledge of the footlocker having been placed in the car. Appellant made no statement to him as to what occurred in the apartment.

Connie also testified:

"The next morning, which was Sunday, the defendant told me that while I was asleep in the car that night he got some money and I didn't know it, and he gave me $21 of it.

"When I saw the defendant that Sunday after I got back

from singing I told him the law was looking for him. I found that out when I heard a boy talking about it; he said the defendant had killed a woman. It was about five o'clock Sunday afternoon when I heard the boy say that."

Connie testified that he thereafter drove appellant and appellant's wife to the police station about 9 p. m. Sunday and drove them back home.

The record does not disclose what, if any, explanation was made by appellant on this occasion. Appellant's wife testified also regarding the trip to the police station, and explained that appellant was taken into a room apart from Connie and herself, and that they did not hear what was said. Appellant, however, was permitted to return home with his wife.

On the following morning (Monday, April 11th), Houston police officers C. F. Langston and C. B. Sheppard went to appellant's home and took appellant and Connie D. Adams out to their car. After some conversation, the officers stated that they wanted to talk to them further and drove away with them in the car.

After driving a few blocks, appellant told the officers to take him back home and he would get them the footlocker.

Appellant then made his confession to Officer Langston which was later reduced to writing and signed by him.

The officers accompanied appellant to his car and appellant unlocked the trunk of the car and took out a footlocker.

Among the contents was a green folder. The footlocker and folder were afterwards identified as being the property of Mamie Cleveland, which was missing from her room. Appellant also delivered to the officers $34 in money which he said was all of the money he had left of that taken out of the footlocker.

Appellant says that there is no proof that the property was taken in robbery; that the hypothesis that it was taken by theft from a dead person is not excluded, except by resort to the confession. It is his contention that in view of the fact that no marks of violence were found on the body of the deceased, no physical evidence of a struggle sufficient to awaken the parties in the adjoining room, and that no witness saw or heard appellant threaten or assault Mamie Cleveland, and the further fact that appellant and Mamie were friendly even to

the last conversation heard between them, that the evidence is insufficient to show that the property was taken by means of an assault. Therefore appellant contends that the evidence is insufficient to corroborate the confession.

In determining this question the following propositions of law, well established by the decisions of this court, must be kept in mind.

The confession of the guilty party alone is not sufficient to support a conviction for the offense, the confession must be corroborated.

"Corroboration of the confession" in effect means proof of the corpus delicti.

"Corpus delicti" as used in this connection means proof of the fact that the crime charged has been committed by someone. See 18 Tex. Jur. 451, Sec. 327.

There must be proof of the corpus delicti, outside of the confession. The confession of the accused alone is not sufficient. See Davis v. State, 101 Tex. Cr. R. 243, 275 S. W. 1060.

In establishing the corpus delicti, the confession may be used in connection with the other facts and circumstances, that is, the confession may be used to aid the proof of the corpus delicti. See Anderson v. State, 34 Tex. Cr. R. 546, 31 S. W. 673; Kugadt v. State, 38 Tex. Cr. R. 681, 694, 44 S. W. 989; and Sowles v. State, 52 Tex. Cr. R. 17, 105 S. W. 178.

The corpus delicti may be proved by circumstances as well as by direct evidence. See Kugadt v. State, supra; Brown v. State, 61 Tex. Cr. R. 334, 136 S. W. 265; and Tabor v. State, 52 Tex. Cr. R. 387, 107 S. W. 1116.

And the confession may render sufficient circumstantial evidence that would be insufficient without it. See Davis v. State, supra.

This being a robbery case, the corpus delicti consists of proof that property has been fraudulently taken by an assault, or by putting in fear of life or bodily injury. It does not include proof of violence or of death by violence. The statute as to corpus delicti, Art. 1204, P. C., applies to homicide cases and has no application to robbery.

Applying these principles of law, does the evidence corroborate the confession, that is, does the evidence outside of the confession, considered alone or in connection with the confession, show that the crime of robbery was committed by someone?

That property was fraudulently taken from the possession of Mamie Cleveland on the occasion is abundantly shown.

It is immaterial as to whether she was conscious, or whether she died before or after the taking of her property. If the taking was made possible by an antecedent assault, the offense is robbery. See Alaniz v. State, 147 Tex. Cr. R. 1, 177 S. W. 2d 965.

The assaulted party being dead, and there being no third person available as a witness, the state was required to resort to circumstances to prove that the property was taken in robbery.

There is no medical testimony to the effect that appellant's pressing of his thumbs against the veins of her neck until she "was limp" or until she "passed out" would necessarily leave marks of violence on her body.

Appellant was present with Mamie Cleveland at 4 A. M. They were alone in the room, though Connie D. Adams and O. C. White were waiting nearby in appellant's car.

Mamie Cleveland was alive and apparently in good health, and was in bed when appellant arrived at 4 A. M. When discovered by her daughter later in the morning she was still in her bed, her body covered with a blanket. Appellant was gone and was later found in possession of her property which had been stolen from her apartment.

Appellant suggests the hypothesis that Mamie Cleveland died a natural death at a time when appellant was not present, probably caused by her having eaten a can of beets, and that appellant returned to her apartment, found her dead, covered her body with a blanket and then formed the intent to take the property and did so. Therefore he says that the offense proven is theft from a dead person and not robbery.

Aside from appellant's confession, the facts and circumstances are ample to relegate such an hypothesis to that of pure speculation.

That appellant did fraudulently take the money is shown beyond question. Mamie had refused his request for a loan. He knew where the money was kept. He took container and contents as well. These circumstances show that she did not consent, unless by reason of an assault.

Appellant made no explanation, so far as shown by the record, other than the version of robbery given in his confession. He talked to someone at the police station. He talked to Connie D. Adams, who waited for him in the car. He gave Connie a part of the money. He did not claim at any time that he obtained the money from Mamie Cleveland in any manner other than by robbery, nor did he claim that Mamie came to her death from any cause other than by his violence.

We overrule appellant's contention that the evidence is insufficient to establish the corpus delicti, to corroborate the confession, and to sustain the verdict.

Appellant sought a continuance based upon the absence of an unnamed witness "Toxicologist (name unknown) who made examination of gastric contents from Mamie Cleveland and bring with you such gastric contents, all reports thereon (case #L-17418 / O-344), Bureau of Identification and Records, Camp Mabry, Austin, Texas."

It was represented that said witness, if present, would testify that Mamie Cleveland died a natural death, and that she was dead prior to the taking of her money by appellant, and prior to the time when appellant was in the presence of Mamie Cleveland.

The application for continuance is not in compliance with the statute which requires that it state that the application is not made for delay. The allegation that it is not made for "delay merely" or "merely for the purpose of delaying" is not sufficient. See Turpin v. State, 149 Tex. Cr. R. 179, 192 S. W. 2d 277; and Art. 543, Sec. 5, C. C. P.

Moreover, the witness is not shown to be competent to testify that Mamie Cleveland was dead before appellant came to her house; and as stated, we think the question of the time of her death is immaterial if the taking was made possible by an intecedent assault made by appellant.

Other bills of exception have been examined and no error is found.

The judgment of the trial court is therefore affirmed.

Opinion approved by the court.