MAJOR PRESTON V. STATE.

No. 25188. May 30, 1951.
Rehearing Denied October 17, 1951.
Writ of Certiorari Denied By Supreme Court of the
United States April 28, 1952.

Hon. Max M. Rogers, Judge Presiding.

*William Woodburn,* Navasota, for appellant.

*George P. Blackburn,* State's Attorney, Austin, for the state.

WOODLEY, Judge.

Appellant, a Negro, was convicted in the district court of Trinity County and given the death penalty for the offense of rape, alleged to have been committed in Walker County, the alleged victim being a 44-year-old white woman, who was married and the mother of two children, one about grown.

The indictment was returned by a Walker County grand jury, and the venue was changed by the court on his own motion to Trinity County, another county of the 12th Judicial District of Texas.

The first point presented in appellant's brief is that the trial court erred in failing to grant him a new trial on the ground that appellant was arraigned and required to plead to the indictment in Walker County without the aid or assistance of counsel, thereby depriving appellant of his right to counsel and thereby materially injuring him. This point is raised by Bill of Exception No. 39, the contention being that appellant was

deprived of the right to question, by proper motion, the organization of the Walker County grand jury on the ground of racial discrimination in the selection of its members.

The record shows that Honorable Max M. Rogers, Judge of the 12th Judicial District, who empaneled the grand jury and ordered the change of venue and who presided at the trial in Trinity County, selected two attorneys residing in Walker County and notified them of their appointment to represent appellant. Thereafter, on the day preceding the arraignment, having determined that the venue should be changed, Judge Rogers, by written order, appointed as his counsel the two attorneys who have ably represented appellant on the trial. One of such attorneys having qualified as county attorney, the other has continued such representation on appeal.

Art. 564, C.C.P., provides, in part, that motions to set aside the indictment shall be disposed of before a change of venue is ordered.

It does not follow that the trial court is without authority to entertain such a motion in the new county, upon a showing that appellant has not waived such right, but has been deprived of the opportunity to sooner make the attack.

Under the facts alleged, we have no doubt that had appellant, after the change of venue and before the trial, filed in Trinity County an attack upon the grand jury on the ground of racial discrimination, and shown therein that he had had no opportunity to present such motion prior to the change of venue, that the trial judge would have exercised the power vested in him to hear the motion and the evidence thereon in order that he might rule upon the matter and in the event of his ruling being adverse to appellant's contention, that such ruling might be reviewed on appeal. Appellant filed no such motion, but first raised the question on the motion for new trial.

The bill does not allege that in fact there existed such discrimination.

In order to show error, it was incumbent upon appellant to show that the ground of racial discrimination in fact existed. For appellant to assert that the judgment should be reversed because he was denied an opportunity to question the organization of the grand jury for racial discrimination if in fact he

had no ground therefor would find no support in law or in reason.

The court heard evidence on the motion for new trial wherein it was shown that two Negroes were members of the grand jury which returned the indictment; that Negroes had served on previous grand juries in Walker County, there being one Negro drawn on each grand jury panel since 1939, a large number having served as grand jurors.

There is no evidence otherwise which might be construed to evidence discrimination against Negroes in the selection of grand juries generally and the evidence affirmatively shows that the particular grand jury which indicted appellant was selected without discrimination. The court did not err in overruling the motion for new trial on this ground.

Appellant next presents in his brief the overruling of his motion to quash the venire upon his allegation that veniremen were selected in Trinity County in violation of the 14th Amendment to the Constitution of the United States.

Our attention is directed to the following testimony heard on the motion:

Dorsey Smith, a member of the Negro race, and also one of the jury commissioners who made up the list of veniremen to be summoned for this case, testified that the court in instructing the jury commissioners told them to be careful in what they did and not make any discrimination and to select only as to population with regard to white and colored veniremen.

"The court in questioning Dorsey Smith brought out the fact that the court instructed the jury commissioners to select jurors with regard to white and colored veniremen according to the population of white to colored, and further questioning by the court brought out the fact that the court went so far as to comment on the percentage of white people as compared to the percentage of Negro people.

"Another jury commissioner responsible for the jury list of veniremen summoned for this case, Edwin McClain, a white man, testified to substantially the same facts. He testified that they were told by the court 'to kind of get a couple or three or four colored people according to the population around over the county and to get good, honest sober citizens.' He further testi-

fied that the lists did compose a fair cross-section of the county as to race and color of qualified jurors. According to the testimony of Mr. McClain, the jury commissioners were told not to bring any jury list back without members of every race in the county on it."

If we understand appellant's contention, it is that though two of its five members were Negroes, and though nine Negroes were drawn for jury service by them, the jury commission discriminated against the Negro race in that they limited the number of Negroes selected for service at the term to the proportion which the Negro race bore to the population of the county.

In Cassell v. Texas, 339 U.S. 282, 94 L. Ed. 839, cited by appellant, proportional racial limitation was held to be forbidden, the Supreme Court declaring further: "An accused is entitled to have charges against him considered by a jury in the selection of which there has been neither inclusion nor exclusion because of race."

Other testimony of the two jury commissioners demonstrates, we believe, that there was no discrimination, and that the number of jurors of the Negro race selected and drawn by the jury commission, was not limited to a proportional representation.

Dorsey Smith testified that the trial judge told the jury commissioners to select good, honest, fair-minded people who wanted to do the right thing, and not to discriminate against any man because of his race or color, and that there was no discrimination by the commissioners in their selection of jurors.

Edwin McClain testified that the judge told the jury commissioners that he couldn't tell them how many members of any race to put on any jury; that the matter of selection of the individual jurors would be left entirely to the commissioners; that no man was to be discriminated against or left off of the jury because of his color; that if they found a juror who they thought would make a good juror, the commissioners could not refuse to put him on "because he was a white man or because he was a colored man," and that there was no discrimination against any race in the selection of the jurors by the jury commissioners.

It is not shown in the record what disposition was made of the jurors of the Negro race whose names were drawn on the

venire, whether or not any one or more of them served on the jury or were challenged or excused. Nor is it shown that the jury was completed from the venire, or that appellant's peremptory challenges were exhausted.

We are convinced that discrimination in the selection of the jurors from which appellant's jury was selected is not shown and that the trial court did not err in overruling the motion to quash the venire.

Bill No. 1 complains that the court refused to let any of the jurors answer the question "You believe the testimony of a white man in preference to that of a Negro, don't you?"

This bill presents no reversible error. It is not shown that any objectionable juror was forced upon appellant by the court's ruling. See Ross v. State, 102 Tex. Cr. R. 364, 277 S.W. 667.

The examination of jurors on voir dire is largely within the discretion of the trial judge. See Plair v. State, 102 Tex. Cr. R. 628, 279 S.W. 267; Darnaby v. State, 108 Tex. Cr. R. 408, 1 S.W. 2d 615.

It is next urged that the evidence is insufficient in that penetration was not proven beyond a reasonable doubt. This contention requires a summary of the facts heard by the jury.

The injured party testified that she had been to town; that on her return home she was walking along a railroad track and turned off on a trail near the stock pens, which was a shorter route to her home and drier than the main road; that at the stock pens someone grabbed her from the back and began to choke her; that he cursed her and said "Now I am going to kill you;" that he choked her and struck her on the face and lip, threw her on the ground and continued to choke and smother her to prevent her screaming; that she bit him; that she became unconscious and remembered nothing which transpired thereafter until some 30 minutes later; that she regained consciousness in the neighborhood of the point she was attacked, at which time she was "in some briars and bushes," and her glasses were gone; that she got up as soon as she was able, and, with difficulty, started toward her home; that her eyes were covered with blood and her face badly beaten. She further testified that there was soreness in her female organs which remained for a good while.

Dr. T. C. Cole, her family physician whose qualifications were conceded, testified that he examined prosecutrix at the hospital following the attack.

Dr. Cole testified in part as follows:

"The face was swollen and there were any number of little pin-point hemorrhages on her face and there were several large bruises and one cut on the lip and bruises over almost her entire body and the clothes were badly torn. Yes sir, I saw some scratches and bruises on her body. As to what part of her body had scratches and bruises; almost her entire body and her clothes were torn and she was muddy; she evidently had been thrown in the mud. Yes sir, I did make an examination of the private parts of Mrs. Johnson. I did find evidence or indication that her private parts had been penetrated. The evidence that I found was some grass inside of her. That's right, some grass inside of her. I imagine that grass was between one and two inches deep in her privates. Yes sir, it was just a blade of grass. She remained in the hospital several days but I don't know the exact number."

"As to me making no further examination of the vagina other than the general examination of the outside and looking on the inside and finding the grass; we looked for evidence of rape. The grass was the only evidence of rape we found in the examination of the vagina; she had been almost killed, I don't know whether that would be evidence of rape or not."

"Yes, sir, I have testified that I found a blade of grass in the vagina. It is impossible that that grass could have entered the vagina some other way. Yes, sir, it could have been put in the vagina by hand or something like that. Yes sir, it is my testimony that it could have been put in by hand or intercourse or otherwise. As to whether it could have happened otherwise than by hand; it would have had to have been placed there by someone else. In my opinion it would not be possible for grass to enter the vagina of a woman if she was dragged through grass and had torn underwear."

He also testified that in his examination he removed from between two of prosecutrix's lower teeth a piece of skin approximately the size of a thumb nail, and which was from a finger of some person other than a white person.

This piece of skin proved to be from the finger of appellant

and itself contained sufficient characteristics to enable the experts to testify that it came from the left middle finger of appellant as shown by his fingerprints taken in 1942 at the Houston shipyards.

Appellant signed two written statements in each of which he confessed to the rape of prosecutrix on the occasion, one of which statements was introduced by the state and the other by appellant.

But, appellant says that the confession alone is insufficient to prove the corpus delicti in the essential element of penetration, and contends that there is insufficient testimony to corroborate the confession and prove the element of penetration.

In establishing the corpus delicti, the confession may be used in connection with the other facts and circumstances and the corpus delicti may be proved by circumstances as well as by direct evidence, and a confession may render sufficient circumstantial evidence that would be insufficient without it. See Watson v. State, 154 Tex. Cr. R. 438, 227 S.W. 2d 559, and cases cited.

Applying such rules, we entertain no doubt as to the sufficiency of the evidence to show penetration and to establish the corpus delicti, that is, the fact that the offense of rape of prosecutrix was committed by some one.

The remaining contention urged in behalf of appellant relates to the opening argument of the county attorney and is raised by Bill of Exception No. 36.

The remarks which were objected to by appellant, as shown by this bill, were: "Now gentlemen, according to this evidence, this defendant did not even know the injured party here. It might have been your wife or your sister or your daughter or my wife."

The court sustained the objection and withdrew the argument from the jury.

Appraising the argument in the light of the facts and of the court's instructions, we are unable to agree that the remarks complained of, if objectionable, were of such a serious nature as to require that a new trial be ordered for failure of the trial judge to declare a mistrial.

Other bills have been considered and need not be discussed.

We commend appellant's court-appointed counsel for their able presentation of his defense, and are indebted to counsel on appeal for a well-prepared brief on the difficult legal questions presented by him in appellant's brief.

We cannot agree that appellant has not received a fair and impartial trial.

Finding no reversible error in the record and the evidence being sufficient, we must decline to set aside the verdict of conviction.

The judgment is affirmed.

Opinion approved by the court.

### ON APPELLANT'S MOTION FOR REHEARING.

DAVIDSON, Judge.

Appellant insists that Cassel v. Texas, supra, is authority for holding that members of the Negro race, of which appellant is one, were discriminated against, because of their race, in the selection of the petit jury that returned the verdict in this case.

As we understand the holding in Cassell's case, it is that under the facts there presented, race discrimination was shown in the organization of the grand jury which returned the indictment in that case. We do not understand that the question of race discrimination in the organization of the petit jury was there presented or decided.

Expressions are found in Cassell's case asserting that race discrimination in the organization of a petit jury constitutes a violation of the equal protection clause of the Fourteenth Amendment to the Federal Constitution. So far as we are aware, no one challenges the correctness of that statement. Certainly this court does not.

Whether discrimination either in the organization of a grand or petit jury exists is a question of fact.

What we hold is that under the facts here presented, no race discrimination in the organization of the petit jury has been

shown. The facts are stated in the original opinion and will not be here again stated or elaborated upon.

Appellant's motion for rehearing is overruled.

Opinion approved by the court.