Algie SMITH, Appellant,

v.

The STATE of Texas, Appellee.

No. 35147.

Court of Criminal Appeals of Texas.

Jan. 2, 1963.

C. C. Divine, Houston, for appellant.

Frank Briscoe, Dist. Atty., Carl E. F. Dally and Carol S. Vance, Asst. Dist. Atty., Houston, and Leon B. Douglas, State's Atty., Austin, for the State.

DICE, Commissioner.

The offense is conspiracy to commit a felony (Article 1622, V.A.P.C.); the punishment, two and a half years in the penitentiary.

The indictment alleged in the first count that on or about the 24th day of August, 1960, the appellant and Frank Brown, Charles King, Robert Swain, Alfred Swain, and Odell Pyles did unlawfully

"conspire, combine, confederate and agree and did enter into a positive agreement together and between themselves, to unlawfully and fraudulently take and steal checks and current money of the United States of over the value of fifty dollars, from various persons, whose name, identity and descriptions were then unknown * *."

Upon the granting of a severance, appellant was separately tried and convicted under the first count of the indictment.

At the trial, the state introduced in evidence a written statement made by appellant to Officer E. R. Williams on December 18, 1960, after having been duly warned.

In the statement appellant related that on August 24, 1960, the date alleged in the indictment, his friend Charlie King called him "to come over to his house that there was a deal on" and asked him if he "wanted to be in on it," to which question appellant replied "yes" and that he would be over. Appellant thereafter went to King's house and he and King then met his

other co-indictees at a Weingarten's store. After this meeting and after one of the group made a telephone call and came back to the table and said "Come on; let's go," they all got into King's car and started driving around town. When they reached Austin Street they had an accident with a truck belonging to the Warren Plumbing Company. After the accident, one of the party talked with the driver of the truck and obtained his signature to a paper stating that the accident was his (the truck driver's) fault. The group immediately made claim to an insurance company and each was paid a certain amount for his alleged injury sustained in the accident. The appellant was paid $500.

After a meeting of almost the same group on September 13, 1960, they got together again the next day at Weingarten's and co-defendant King told appellant " * * we had a deal going on" and asked him if he wanted to go and appellant replied " 'Yes.' " Appellant stated that they then got in King's car and after driving around a short time he saw a "vegetable truck backing into a parking place" and that "Then all of a sudden we hit it." One of the group obtained the information as to what insurance company carried the insurance on the vegetable truck, and after contacting the insurance company they were each paid $200. Each of the group paid King one-third of the money obtained, because "he was the one that had made the deal up."

Appellant, in the statement, related:

"What I mean by deal is that we would get together and go do some odd jobs and later have a wreck and collect on the insurance. I knew the accidents we were having were on purpose to collect the insurance."

Appellant further stated that on October 11, 1960, after borrowing a car, almost the same group of persons were told by one of the co-defendants, Robert Swain: " * * * we had a deal on," and while driving down Milam Street they hit a red truck. One of the group "did all of the talking," the police were called to make an investigation, and appellant went home. He was later picked up by Robert Swain and taken to the insurance company in order to collect on their claim.

To corroborate the confession, the state called various witnesses.

Daniel Carpenter, the driver of the Warren Plumbing Company truck, testified to his involvement in the collision on August 24, stating that after the accident and while excited he did sign a statement in which he admitted striking the King car and acknowledged that he was in the wrong but that, after time for reflection, he realized that he was in the right.

Oscar Avera, claim superintendent for Commercial Union North British Group, representing the insurance carrier for the Warren Plumbing Company, testified that on August 20, 1960, the appellant came to his office to make a claim arising out of the accident with the Warren company vehicle; that appellant was accompanied by the five other men who were riding in the car with him; and that King gave him the handwritten note of the driver of the Warren truck. He further testified that appellant was paid $500 on his claim and the others were paid amounts ranging from $400 to $900, each.

John R. Saur, insurance adjuster for the American Surety Insurance Company, testified that in connection with the accident, on September 14, with the vegetable truck appellant was paid on his claim $258 and the various other occupants of the automobile in collision with the truck were paid different amounts.

Willis T. McBride, employed as an insurance adjuster for the Hartford Insurance Group, testified that his company carried the liability insurance on Watson Bros. vehicles. Shortly after October 12, 1960, the appellant, with four or five others, presented to the witness's company a claim arising out of an accident with one of the

Watson Bros. trucks, on Milam Street. The insurance company did not pay the claim made by appellant nor the claims made by the others. The witness took a statement from the appellant regarding the accident, but appellant would not sign it.

Testifying as a witness in his own behalf, appellant denied having entered into any conspiracy or agreement to steal any money or checks, and stated that the accidents in which he was involved were bona fide accidents and were not planned. In his testimony he repudiated his written confession, stating that he signed it because he was scared by reason of threats made by Officer Williams.

Appellant's sole contention on appeal is that the evidence is insufficient to sustain the conviction. With such contention we agree.

There is no evidence, outside of appellant's written confession, showing his guilt of the offense charged.

It is well settled that a confession, alone, is not sufficient to support a conviction. It must be corroborated. There must be proof that the offense was committed—that is, the corpus delicti must be proved. The confession may be used to aid in proving the corpus delicti but is not alone sufficient. Watson v. State, 154 Tex.Cr.R. 438, 227 S.W.2d 559; Ellison v. State, 155 Tex.Cr.R. 336, 235 S.W.2d 157; Board v. State, Tex.Cr.App., 320 S.W.2d 668; and Marsh v. State, Tex.Cr.App., 342 S.W.2d 435.

The extrinsic evidence offered by the state in the instant case only shows that appellant was involved in the automobile collisions and was paid claims which he made to the insurance companies for injuries alleged to have been sustained. There was no proof, outside of appellant's confession, that the claims for insurance were fraudulent.

While such evidence corroborates that portion of appellant's written confession relating to the automobile collisions, it does not corroborate his admission in the confession of the conspiracy to commit the crime of theft.

The crime of conspiracy is complete when the unlawful agreement is entered into. Witt v. State, 146 Tex.Cr.R. 627, 177 S.W.2d 781.

The mere showing by extrinsic evidence that after the conspiracy was alleged to have been entered into appellant was involved in the automobile collisions and was paid insurance claims is not sufficient to corroborate his admission in the confession of an agreement and conspiracy entered into to steal checks and money.

The judgment is reversed and the cause is remanded.

Opinion approved by the court.