KIRBY TURPIN V. THE STATE.

No. 23271. Delivered January 16, 1946.
Rehearing Denied February 20, 1946.

The opinion states the case.

*J. A. Carlisle* and *R. M. Carter,* both of Sherman, for appellant.

*Ernest S. Goens,* State's Attorney, of Austin, for the State.

BEAUCHAMP, Judge.

The appellant was assessed a penalty of five years on a charge of rape.

The prosecuting witness, a girl sixteen years of age, lived with her parents three miles north of Whitesboro, in Grayson County. On January 5th, 1945, the appellant and another boy went in a car to her home about eight o'clock in the evening and asked that the girl go with them to a picture show. Appellant was a stranger but the parents gave their consent. Leaving with the two boys, they sought another girl who declined to go. They picked up a third young man who accompanied them to Whitesboro where, after some time, they appeared at an all-night eating place where appellant had a sister employed. Earl Burrow, a truck driver from Paris, was present and after a conversation the nature of which did not seem to impress all of the wit-

nesses the same way, four people, the appellant, the prosecutrix, appellant's sister and Burrow, left in the one seat in the cab of the truck and drove some five miles across the line into Cooke County, stopping at a road side park. The witnesses are in sharp disagreement as to what took place at this park. Prosecutrix says that appellant's sister and Burrow took a blanket and went into the woods and were gone about thirty minutes. She and appellant remained in the truck and, with but slight protest on her part, engaged in sexual intercourse.

The evidence of things that followed from this time is not in conflict. The parties returned to the eating place. Apparently undisturbed by what had taken place, the prosecutrix joined with the other couple and appellant, as her companion, in eating supper. She and appellant remained together the rest of the night, a part of the time in the cafe. The next day they left for Fort Worth and Dallas, where they registered at the hotel together and attended a picture show on Sunday. On Monday the prosecutrix took an interurban to Sherman and a bus to Whitesboro where she returned to her home at a late hour Monday night. The next day she accompanied her father to Sherman where the matter was reported to the county attorney and, for the first time, she gave her story of what had taken place. This prosecution is based on the act out of Whitesboro and across the line in Cooke County.

The appellant did not testify but his sister stoutly denied the story which prosecutrix gave as to the occurrence in Cooke County, saying that she never left the prosecutrix and her brother in the cab, and that Burrow got out of the car for only a few minutes to fix a light. In some respects her story was corroborated by the owner of the cafe, particularly as to the time they were away on this ride.

When the case was called for trial appellant filed a motion for a continuance, or a delay, until they could secure the attendance of Earl Burrow for whom he had sought a subpoena. It appears that the clerk misspelled the name of Burrow in the subpoena, and it is probably for that reason the Sheriff of Lamar County did not serve the witness. This was a first motion for continuance. The evidence sought was pertinent. On a motion for a new trial the affidavit of Burrow was attached, showing the things which he would testify and which were substantially the same as set out in the motion for a continuance.

Our attention has been called to the fact that neither the motion nor the affidavit recites the pertinent evidence which Burrow would give but state a legal conclusion to which he would testify, that is that the appellant did not rape the prosecuting witness on that particular occasion. This defect will require no further discussion because we find the motion is fatally defective in that it does not comply with Article 543, Sec. 5, Vernon's Ann. C. C. P. After setting out the absence of Burrow as a witness, and the testimony which he was expected to give; that he is not absent by the procurement or consent of the defendant, it says "and that this application is not made for delay only." It has been consistently held by this court that the use of the word "only" amounts to an admission that a delay is a part of the things sought and its use is fatally defective. See Martinez v. State, 161 S. W. (2d) 75, and authorities therein reviewed. The appellant's bill of exception complaining of the overruling of his motion cannot, therefore, be sustained.

Bill of Exception No. 1 shows that appellant sought to quash the special venire because they had not been summoned by registered mail. By the court's qualification it is shown that the appellant had agreed to such service. Furthermore, the bill does not show that any of the veniremen failed to appear in court in response to the summons. In the state of the record we see no reversible error on this ground.

By Bill of Exception No. 2 complaint is made to the action of the court in refusing to postpone the trial of his case for one day, that he may be served with a copy of the special venire. The court qualified this bill, stating that the defendant was at liberty under bond. Under the showing made in the bill and the court's qualification, we think no error was committed. See Art. 601, Vernon's Ann. C. C. P.

A more serious question is presented by Bill of Exception No. 4, which recites that the County Attorney, while cross-examining appellant's sister, asked her how many times appellant had been married. The court sustained the objection to this question and instructed the jury not to consider it.

As contended by the appellant, this court has frequently held that in a prosecution of this nature it is error to prove that appellant was a married man. There have been some inconsistent holdings, and some criticism of this line of authority, but we do not believe that the rules have been relaxed and do not wish to be so understood at this time. We call attention to

the very able discussion of the subject in the opinion by the late Judge Martin, a commissioner of this court, in the case of Forrester v. State, 4 S. W. (2d) 966.

In the instant case the form of the question is especially objectionable in that it asked "how many times" the accused had been married. This amounts to an assertion by the county attorney that he had, with the question being as to how many times. This appears to intimate that he had been married more than once. The cautious trial judge at once sustained the objection to the question, which went without answer, and instructed the jury not to consider it. The bill presents the contention, however, that it was inflammatory and of such a nature that the ruling of the court could not remove it from the minds of the jury.

Most frequently in a case of conviction, and especially where a heavy penalty has been assessed, this court is not permitted to speculate as to the harmful effect of such efforts to introduce improper testimony. However, it has always been considered and frequently so stated that each case has its own characteristics and that we must look at the entire record with the surrounding circumstances, the nature of the evidence sought and its possible relationship to other testimony, in order to determine the probability or possibility of injury. The question asked and the intimated facts, if proven, would hardly be more impressive on the jury than the evidence found in the record without objection. The accused was twenty-five years of age, the prosecutrix was sixteen. He had taken her to Fort Worth and Dallas, stayed with her in a hotel, and discussed marriage though there does not appear a direct promise of marriage. He had left with this girl from her parents' home and after three nights agreed for her to return. The audacity of his conduct was calculated to inflame the minds of a jury, even in the face of the conduct and demeanor of the prosecutrix and the delinquency of parents in permitting her to go away from her home with a stranger. Nevertheless, the jury gave him the lowest penalty. There is no indication in the verdict, under all of the circumstances of the case, that the jury's mind was inflamed by this question. Had the evidence been admitted it could add but little fuel to the flame which the admitted evidence must have created in the minds of the jury. We are unable to conclude that the judgment of the trial court should be reversed because of the matters complained of in this bill. Patterson v. State, 147 S. W. (2d) 784.

184

Bill of Exception No. 5, as qualified by the court, shows no error and a discussion will not be necessary.

The judgment of the trial court is affirmed.

ON MOTION FOR REHEARING.

GRAVES, Judge.

Appellant's motion but reiterates matters heretofore passed upon in the original opinion. There is appended to said motion an affidavit from the prosecutrix in which she seems to retract her testimony given upon the trial of the case. This cause was tried on February 21st and 22nd, 1945, and filed in this court on appeal on September 27, 1945; it was affirmed on January 16, 1946, and the affidavit of this prosecutrix was executed on January 20, 1946, after such affirmance. We cannot consider such an affidavit, not made a matter of record in the court below at the proper time. Its consideration would lay the predicate for endless confusion in our courts; to efforts to influence witnesses to retract statements given under the sanction of an oath in public trials; to accept such would never make an end to litigation to such an extent that orderly trials would be impossible and never ending.

The matters contained in this belated affidavit are not properly before this court; they might be proper before some other tribunal but not this one.

We think the original opinion properly disposed of the matters before us, and the motion will be overruled.