**William Earnest DeRAMUS, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 38551.

Court of Criminal Appeals of Texas.

Dec. 1, 1965.

Carl H. Steck, Lyman A. Hall, Joe J. Newman, Houston, for appellant.

Frank Briscoe, Dist. Atty., Carl E. F. Dally, Charles E. Bonney and Erwin G. Ernst, Asst. Dist. Attys., Houston, and Leon B. Douglas, State's Atty., Austin, for the State.

McDONALD, Presiding Judge.

The offense is murder with malice; the punishment, 30 years in the penitentiary.

It is undisputed that appellant killed the deceased, who was appellant's wife's stepfather, by shooting him with a gun on September 5, 1964, and in view of the disposition of the case, a brief summation of the facts will suffice.

Appellant and his family occupied an apartment located above the apartment of Willis Taylor, son of the deceased. On the afternoon of September 5, appellant and the deceased drank beer with Willis Taylor in the latter's apartment, then went to a "little beer joint next door" where they continued to drink beer until "just about dark," at which time appellant returned home, while the deceased and his son went to another place. Willis Taylor testified that when he and his father arrived home, "* * * I looked upstairs, and Mr. De-Ramus' (appellant's) door was open and so was the window and I saw him beating my sister (appellant's wife) up, up there." Witness Taylor went to the appellant's apartment and gave appellant a rather severe beating, finally being "pulled off" appellant by the deceased, and it was after this fight that appellant went into a bedroom, armed himself with a pistol, and killed the deceased. It was appellant's contention that he was in fear of his life, and was resisting an apparent attack by the deceased when the killing occurred.

Appellant testified in his own behalf, and it is the unusually zealous cross-examination of him by the prosecution which is the subject of many informal bills of exception. Complaint is made concerning the following discourse:

Q: "Now this pistol appears to be broken, is that correct?"

A: "Yes sir. The frame is cracked."

Q: "Did you break this pistol on your son's head?"

At this point, appellant's counsel objected to the question as being highly inflammatory and prejudicial, and moved for a mistrial. The trial court sustained the objection, stating, "I certainly instruct the jury to disregard it. What is your purpose of such a question?"

Prosecutor: "All right. May I go on, Your Honor?"

The Court: "Wait a minute."

Q: "Do you deny striking your son with this pistol this very day?"

A: "Yes, sir. I do."

Again appellant moved for a mistrial, which the court overruled. Over counsel's objection, the prosecutor was then allowed to ask questions concerning whether or not appellant had struck his son with the pistol on the day of the killing, on the theory that such inquiry was invited by testimony previously elicited by appellant's counsel, and that these questions were directed toward showing the state of mind of appellant at the time of the alleged homicide. The prosecutor, after asking several questions thus limited in scope, returned to the general inquiry previously ruled to be inadmissible by the court, and asked these questions, all of which were answered negatively:

Q: "All right. Do you state that this pistol was not broken as a result of striking your son with it?"

Q: "Do you say under oath that you have never struck your son with this pistol?"

Q: "What about one week before this alleged killing? Do you say under oath that you have never struck your son with this pistol?"

Considering the record before us, the entire line of questioning was inadmissible. A search of the statement of facts fails to reveal any evidence that would lead the prosecutor to believe that appellant broke the pistol on his son's head. Vallone v. State, 141 Tex.Cr.R. 220, 147 S.W.2d 227; Faubian v. State, 83 Tex.Cr.R. 234, 203 S.W. 897; Clements v. State, 69 Tex.Cr.R. 369, 153 S.W. 1137. Appellant testified that the pistol frame was broken when he placed the pistol in a vise and attempted to straighten the barrel, and that the grips were broken when he dropped the pistol. This evidence is undisputed. There was also no showing that, if this transaction did occur it tended to show what appellant's state of mind was at the time he killed the deceased. Nor do we agree that appellant "opened the door" to this line of inquiry. The only pertinent transaction of record between appellant and his son at the time these questions were asked involved a conversation between them during which appellant admonished his son for staying out so late at night. The state did not connect this conversation with the questions about the broken pistol.

In Mounts v. State, 148 Tex.Cr.R. 177, 185 S.W.2d 731, appellant was asked, "You never did pistol-whip anybody, did you?" Answer: "No, sir." Objection was sustained and the jury was instructed to disregard the inquiry. The prosecutor then asked, "On December 24, 1933, at Live Oak-Oak Cliff Boulevard at 9:15, I will ask you if you didn't have an altercation and pistol-whip a victim?" The asking of these questions was found to be reversible error, as they were calculated to impress the jury that the defendant had been guilty of such an offense and amounted to unauthorized

proof of facts harmful to the defendant. We reach the same conclusion in the case at bar.

The error here was compounded when the prosecutor refused to accept the court's ruling, and persisted in asking questions along the same line. House v. State, 130 Tex.Cr.R. 520, 94 S.W.2d 1158; Coon v. State, 117 Tex.Cr.R. 158, 35 S.W.2d 419; Jupe v. State, 86 Tex.Cr.R. 573, 217 S.W. 1041.

The State contends that such inquiry was authorized by Article 1257a, Vernon's Ann. P.C., which provides that in all prosecutions for felonious homicide, testimony is admissible as to all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the homicide, which may be considered by the jury in determining the punishment to be assessed. For the same reason, the prosecutor cross-examined appellant as to whether or not he had picked up his three-year old son by the hair on his head and slapped his face, and also as to whether or not he had forced his wife to play "Russian Roulette" with a loaded pistol. This Court held similar extraneous transactions to be highly prejudicial and therefore inadmissible in Whiteside v. State, 111 Tex.Cr.R. 116, 12 S.W.2d 218.

The State argues that even if these lines of questioning were improper, no harm was caused appellant because the questions were answered negatively or not at all; appellant's objections to the questions were sustained; and the trial court instructed the jury to disregard these matters.

In Turpin v. State, 149 Tex.Cr.App. 179, 192 S.W.2d 277, it was stated:

"Most frequently in a case of conviction, and especially where a heavy penalty has been assessed, this court is not permitted to speculate as to the harmful effect of such efforts to introduce improper testimony. However, it has always been considered and frequently so stated that each case has its own characteristics and that we must look at the entire record with the surrounding circumstances, the nature of the evidence sought and its possible relationship to other testimony, in order to determine the probability or possibility of injury." 192 S.W.2d 279.

While the record will not support such an assumption, we will assume for a moment that appellant did break a pistol over his son's head, and that he forced his wife to play "Russian Roulette," and that he picked up his son by his hair and slapped his face.

In Jones v. State, 151 Tex.Cr.R. 115, 205 S.W.2d 590, where the accused had, on the afternoon preceding the night he allegedly killed the deceased, showed a witness a shotgun and intimated that he would use it if anyone "got after him," this Court reversed the conviction because there was no connection between the remark and the killing.

In Lee v. State, 147 Tex.Cr.R. 548, 182 S.W.2d 490, witnesses were asked about other transactions which might be considered by the jury to prove that, at some time prior to the homicide, appellant had been on a general rampage, engaging in either reprehensible or criminal conduct. This Court stated, "We are unable to find that either of these transactions had any connection with the homicide, from the standpoint of time, place or parties." 182 S.W.2d 493.

In Spivey v. State, 146 Tex.Cr.R. 11, 171 S.W.2d 140, where a conviction for murder was reversed, this Court held inadmissible evidence to the effect that the accused had been drinking and visiting several "honky-tonks" before and after the crime which had been admitted on the theory that it showed state of mind. We stated, "What that state of mind was and what part it had on the pertinent issue of intent to kill at the time he struck (deceased) is not revealed, and we are unable to conceive of any. Under the circumstances * * * it

is rather forceful, as are other items objected to, for the purpose of showing that he was a ruthless, reckless, disreputable fellow." 171 S.W.2d 141.

It was not shown at what time any of these acts of misconduct occurred, and the acts did not reveal a previous relationship existing between appellant and the deceased, but involved transactions which, if they occurred at all, occurred between appellant and his wife and children, and do not reflect what appellant's state of mind was at the moment he shot the deceased. These inquiries by the State simply amounted to unauthorized proof by implication that appellant had, at times previous, been in a foul state of mind, and when taken together, tend to show that he is a mean person generally. This the State cannot prove. Craig v. State, 169 Tex.Cr. R. 23, 331 S.W.2d 925; Young v. State, 159 Tex.Cr.R. 240, 261 S.W.2d 836; Spivey v. State, 146 Tex.Cr.R. 11, 171 S.W.2d 140.

For the errors reflected, the conviction is reversed and the cause remanded.